## GORDON v. REINHEIMER.

No. 21766.    Feb. 13, 1934.

Bond, Hatcher & Bond, for plaintiff in error.

Melton & Melton, for defendant in error.

RILEY, C. J. This action was commenced by defendant in error, William Reinheimer, for the recovery of damages in the sum of $5,000. His claim in substance is that, in 1925, by oral agreement he rented the ground floor of a three-story brick building in Chickasha from defendant at an agreed rental in which plaintiff conducted a general mercantile business, and that he had occupied said room since said time; that it was orally agreed that defendant would keep said building in a good and tenantable condition, "and this was the duty of defendant under the law and under the agreement whereby plaintiff occupied the premises." He complains that on or about August 1, 1927, the front of the building, including the floor, became out of repair, dilapidated, and unsightly, and that defendant repeatedly promised to repair same; that the second story of said building above the room occupied by plaintiff was occupied as a rooming house, and that the plumbing in the building extended from the second floor down along the walls of the storeroom, and that about October, 1927, said plumbing became out of repair so that the water from the baths, toilets, etc., would frequently break through and damage and destroy certain of plaintiff's merchandise and cause offensive odors in the storeroom so as to render same untenantable; that by reason of the condition of the front, the condition of the storeroom, and because of the offensive odors caused by the defective plumbing since about September 1, 1927, plaintiff's custom-

ers were offended and he lost a large amount of trade from people who theretofore had been accustomed to trade with him, and that several thousand dollars' worth of merchandise was damaged so as to render it worthless; defendant frequently agreed to repair said building as it was his duty to do under his rental contract, but that he wholly failed so to do, all to plaintiff's damage in the sum of $5,000.

Defendant answered by general denial, by certain specific admissions, and alleged in substance that he had rented said storeroom to plaintiff in 1925, for a term of two years beginning January 1, 1926, and ending December 31, 1927. He denied that the agreement was oral, and alleged that the contract was in writing and attached a copy thereof to his answer and made the same a part of his answer. He alleged that said contract specifically provided what repairs were to be made by him and none other; that he had strictly complied with said contract as to repairs, and that the repairs so made were approved by plaintiff; that plaintiff had failed to pay the rentals for the months of April, May, June, and July, 1928, aggregating some $500; that he had obtained judgment for $150 thereof and that suits were pending for the recovery of the other $350. Other allegations were made going to the want of good faith of plaintiff in prosecuting the action.

The contract, alleged to have been executed and not denied, provided in part:

"It is understood and agreed by and between the parties hereto that said store is to be repaired at the cost of the first party in the following particulars, and none other:

"The front arrangement of the store and some plastering in the back end of the store are to be made pursuant to plans and estimates furnished to second party by Chester Cowan of Chickasha, Okla., at a cost not to exceed $350, and first party shall be liable for the actual cost of said improvements, but not to exceed $350.

"The ceiling shall be painted and walls papered pursuant to plans and estimates at a cost not to exceed $90, and first party shall be liable for the actual cost of said painting and papering, but not to exceed $90."

Plaintiff filed no reply and made no denial under oath of the execution of the alleged written contract. The cause was tried to a jury, resulting in a verdict and judgment for plaintiff, and defendant appealed.

As stated above, plaintiff pleaded an oral contract and defendant pleaded a written one. No other or further contract was pleaded by

either party. At the trial plaintiff admitted execution of the written contract, and also admitted that the repairs called for therein had been made by defendant. It will be observed that the written contract expired by its terms December 31, 1927. Plaintiff was permitted to testify without objection that in December, 1927, the lease being about to expire, defendant came over to renew it, and that "so finally we agreed on a rental for three years, a year or three years, for $150 a month and him put in a new front." He then testified:

"Q. That was the oral contract you had with him that you plead in your petition here, was it not? A. Yes, sir. Q. Go ahead. A. So it was agreed that this new front was to be put in by January 15, 1928—we had Mr. Coffman—he was there and drew up the plans; he came down and he told him it would cost about $1,500. Q. What was the condition of the front of the building at that time with reference to being unsightly or unattractive? A. It was a very ragged looking front; the tiling in the front had been washed out and been washed out for nearly two years. Q. Would that condition naturally deter people seeking the purchase of the character of merchandise you handled? A. I should think it did."

The petition will, therefore, be treated as amended in that respect and to the extent of alleging an oral agreement as above testified to for the renewal of the lease.

Plaintiff was also permitted to testify at length with reference to the plumbing being out of repair during the year 1927, and damage and injury to his stock of merchandise thereby, and also after January 1, 1928, and particularly after February 1, 1928, and after August 1, 1928. He testified as to the amount of damage to his stock of merchandise during this entire period as being about $2,500. There was no evidence fixing any separate amount of damage occasioned by failure to put in the new front. Evidence was given to the effect that because of the condition of the front of the room, coupled with the foul odors caused by leaks from the plumbing, plaintiff's trade fell off considerably, that is, from some $2,000 to $4,000 per month to some $30 to $50 per day. It is shown that the tenancy was terminated as early as August 1, 1928, by proper service of written notice. The evidence as to the damage covered is part of the year 1927 and practically all of the year 1928. There was no evidence by which the jury could separate or determine the amount of damages or separate the amount of damage claimed to have been suffered during the year 1927 from that claimed from January 1, to August 1, 1928, or to separate that

claimed to have been suffered after August 1, 1928.

We mention this for the reason that the court, over the objection of defendant, instructed the jury, in instruction No. 4, as follows:

"The court instructs the jury that should you find and believe from the evidence that the plumbing in the rooming house on the second story of defendant's building became out of repair or defective, thus causing the same to overflow or leak through the ceiling down the wall on the plaintiff's merchandise, and after being notified of said condition, and after January 1, 1928, that the defendant entered into an agreement with the plaintiff to the effect that he would repair said plumbing or defective condition that caused said water to leak through the ceiling and run down the wall of plaintiff's place of business, and you further find and believe from the evidence that after such agreement, that the defendant failed and neglected to so repair said defective plumbing on the second floor of said building and that it thereafter and prior to August 1, 1928, continued to leak through and damage plaintiff's stock of merchandise, or you further find and believe from the evidence that by reason of such leakage, that the plaintiff was compelled to move his stock of merchandise from place to place in order to prevent being damaged, thus causing an unsightly appearance, damaging his business, or that said leakage caused an offensive odor in plaintiff's place of business to such an extent that his former customers refused or ceased to trade with him and thus causing him to lose business, to his damage, then and in that event, the law would be for the plaintiff for such an amount as you may find and believe from the evidence he has sustained by reason thereof, unless you should find for the defendant under some other instruction hereinafter given you."

The court properly instructed the jury that there was no implied duty upon the part of the owner of the premises leased for business purposes to keep same in repair, and that the duty so to do may arise upon contract only. Barker v. Findley, 136 Okla. 55, 275 P. 1054. See, also, the rule as stated in 36 C. J. 135, as follows:

"An agreement by a lessor to repair the demised premises creates a purely contractual relation. As he is under no general obligation to put or keep the demised premises in repair, his covenants to do so are not to be enlarged upon beyond their fair intent."

By reason of sections 7370 and 7371, C. O. S. 1921, this rule is applicable in this state only to premises leased for other than dwelling places. Barker v. Findley, supra.

Instruction No. 4, quoted above, is error for the reason that plaintiff wholly failed to prove that the defendant, in the alleged oral contract for the lease of the premises after the expiration of the written lease, agreed or contracted to repair the leased premises except as to putting in a new front. Plaintiff neither pleaded nor proved an agreement by defendant to repair except as to the new front. Therefore, the right of plaintiff to recover should have been limited to damages, if any, sustained by reason of the failure of the defendant to install or put in a new front in said building, and this between January 15, and August 1, 1928. The testimony of plaintiff himself was that defendant was to have until January 15, 1928, to complete said front. The undisputed evidence is that the lease was terminated by proper written notice August 1, 1928. Defendant contends that the time should have been limited to June 2, 1928, instead of August 1st, for the reason that the tenancy claimed by plaintiff was terminated June 2nd. The only evidence of service of notice to terminate the tenancy was the notice proved to have been served June 2, 1928. This was not 30 days before July 1st, and therefore was not sufficient to terminate the tenancy July 1st. The next rent-paying period was August 1st, and the tenancy was therefore not effectively terminated until that date.

Defendant also complains because the court refused to permit him to prove that plaintiff failed to pay the rental for several months during the year 1928. The court called defendant's attention to the fact that he had not pleaded rentals claimed to be due as a set-off against any damages that plaintiff might be entitled to recover. He was given an opportunity to so amend his pleadings and thereby make the evidence admissible. He did not do so, and the court properly refused the evidence so offered. Security Mtg. Co. v. Callis, 169 N. Y. S. 566.

Defendant also contends that damages should have been limited to the decrease in the rental value occasioned by the failure of defendant to comply with his covenant to repair. This is the general rule in the absence of a plea and proof of special damages, but special damages may also be recovered. Kohne v. White (Wash.) 40 P. 794.

Because of the error in the instruction as to the time within which the damages should have been limited, and because of the failure of the plaintiff to produce evidence by which the damage suffered by him, if any, between the 15th of January and

346

the 1st of August, 1928, could be excepted from that claimed to have been caused during 1927 and that caused after August 1, 1928, the judgment must be, and is hereby, reversed, and the cause is remanded, with directions to grant a new trial.

CULLISON, V. C. J., and ANDREWS, OSBORN, and BUSBY, JJ., concur.