Jack BRADLEY, Plaintiff in Error,

v.

Paul McCABE, Estes Fern McCabe and
Irl Alston, Defendants in Error.

No. 41905.

Supreme Court of Oklahoma.

July 18, 1967.

Rehearing Denied Sept. 26, 1967.

Wayne Russell, Wilburton, B. S. Null, Hartshorne, Hugh Sandlin, Holdenville, Willard M. Gotcher, McAlester, for plaintiff in error.

Loren McCurtain, McAlester, Roy B. Powell, Wilburton, for defendants in error.

BLACKBIRD, Justice.

The action involved in this appeal arose out of a controversy between the defendants in error, Paul and Fern McCabe, as the owners of a parcel of rural real estate, containing more than 270 acres, with a 6-room house on it, and plaintiff in error, as lessee of said property.

Plaintiff in error, hereinafter referred to as "plaintiff", leased the property in October, 1962, from its then owner, one Kenneth E. Smith, under a written "LEASE CONTRACT", for a term of five years ending October 31, 1967, for an annual cash rental, payable one year in advance, in

the sum of $1200.00 said advance rental being due on November 1st of each of said years.

After plaintiff had paid the rent for the year November, 1962 to November, 1963, Smith sold the property to Paul and Fern McCabe, in January, 1963.

Thereafter, and after plaintiff had paid the rent for the year November, 1963 to November, 1964, the above mentioned house on the land was destroyed by fire in March, 1964; and plaintiff did not pay any of the lease's next annual rental due on November 1st of that year.

Thereafter, in April, 1965, the McCabes brought suit in the Justice of the Peace Court of one Irl Alston, Justice of the Peace in Latimore County's "Red Oak Township", to recover possession of the property.

That suit was still pending when, in the latter part of the same month, plaintiff commenced the present district court action against both the McCabes and the Justice of the Peace hereinafter collectively referred to as "defendants".

In his petition herein, plaintiff alleged most of the above facts, and, among other things, referred to certain of the lease's provisions (a copy of the lease was attached to the petition) which were incorporated in its paragraph "IV", in the following words:
"Lessors agree that they will pay taxes and insurance upon the property as the same become due and payable at no cost to the Lessee, and that the Lessee shall have the right to quiet enjoyment of the premises, free from interruption or interference by third parties during the term of this lease contract."

In his petition, plaintiff complained that, despite the McCabes' obligation under the lease to insure the premises free of cost to him, they had failed and refused to rebuild the above mentioned house on the property. Plaintiff further alleged that the house's value was $8,000.00, and its rental value was at least $60.00 per month; that on October 29, 1964, (after the house burned and before the November 1st rental-paying date that year) plaintiff notified defendant, in writing, that he was entitled to "an adjustment and proration" of the rent "by reason of the burning of said house, and further notifying said defendant that he was ready and willing to pay said rent on said adjusted and prorated basis, but that said defendant has failed and refused to accept the same; * * *".

In another part of his petition, plaintiff alleged that a reasonable rent for the property (without the house) "would be $480.00 per year and the plaintiff is entitled to have the rent provided in the lease abated and prorated * * *" to that sum— which the petition recited plaintiff was tendering.

Plaintiff's petition further alleged that since he went into possession of the property, he had improved it as follows: Repairs to the house $700.00; repairs to fences $300.00; cleaning well and building well house at a cost of $70.00; rebuilding a low-water bridge at a cost of approximately $100.00; and that he has further improved the premises by cutting brush and other clearing at a total cost of $300.00.

Another portion of plaintiff's petition is as follows:

"* * * Plaintiff further represents that he is entitled to a credit on any rents found due by the court in the sum of $1200.00 being the amount * * * (he) * * * had expended on said house destroyed by fire and for which * * * defendant recovered in insurance * * * plaintiff having lost the use or rental value of said house * * * for a period of eight months in the sum of $480.00, * * * plaintiff having at the time said house was burned paid the rent in advance in the sum of $1200.00."

With reference to the McCabes' aforementioned forcible entry and detainer action pending against him in the court of the defendant justice of the peace, plaintiff's petition alleged that it was commenced without "the statutory 10 days notice in writing to pay rental or vacate * * *" and that Justice of the Peace Alston, and

his Court, is without jurisdiction therein, but, despite this, defendants "are now attempting by the use of judicial force to proceed in said cause * * *". Plaintiff's verified petition further alleged:

"That plaintiff verily believes that unless a temporary restraining order is issued herein restraining and enjoining the said defendants from proceeding in said forceable entry and detainer case as alleged herein that the said defendants will, by judicial force, proceed in said cause to * * * (plaintiff's) * * * irreparable injury and damage * * *; that said Justice Court is without authority to hear or determine the equities existing between the parties to said contract and is without jurisdiction to proceed therein * * *; that plaintiff has no plain, complete and adequate remedy at law and an order further restraining the said defendants and each of them from interfering with the peaceable possession of said plaintiff and said described property.

"WHEREFORE PLAINTIFF PRAYS judgment and decree of this court abating and prorating the rents due on said contract and that a reasonable rent therefore be fixed by the court and that the plaintiff be credited on said rent for all sums advanced and that the said defendants be restrained and enjoined from interfering with the plaintiff in the peaceable possession of said described property and restrained and enjoined from proceeding in said forceable entry and detainer cause pending in said Justice Court and for all other proper and equitable relief to which plaintiff may be entitled herein * * *".

In June, the second month after the filing of the above described petition, the court issued a temporary restraining order against the defendants, upon plaintiff's written motion therefor, and the next month, July, 1965, vacated it upon defendants' motion.

After defendants had filed an answer to plaintiff's petition, and plaintiff had filed a reply later that summer, the cause came on for trial in October, 1965.

When the parties, and their counsel, had appeared and announced "ready to proceed", and the witnesses had been sworn, an oral demurrer to plaintiff's petition was interposed by defendants, on the grounds that plaintiff had made "no actual tender or deposit of the rental for the current lease period", and that plaintiff was not entitled to the relief he sought in his petition. Without any apparent objection to this manner of proceeding, by either counsel, the court heard their arguments on the demurrer, during which plaintiff requested leave to amend his petition to show that he tendered "an amount the court might find due, or we ask permission to amend the petition to say 'the plaintiff now tenders and pays into court the sum of $1200.00, the rental due', and we are ready to pay it here and now." After further argument, the court sustained defendants' said demurrer and denied plaintiff's request to amend his petition, on the ground it came too late. After the overruling of his motion for a new trial, plaintiff lodged the present appeal.

Plaintiff presents his arguments for reversal under eleven propositions. Under both the 7th and 11th of these, he takes the position that his petition alleged that, after the aforementioned house on the acreage burned, the McCabes collected the proceeds of a fire insurance policy on it in a sum equivalent to its alleged value of $8,000.00; that, under the terms of the lease, they were obligated to use this money to rebuild the house; that, when they failed and refused to do so, they breached the lease contract, and, having done so before plaintiff was ever in default of any payment of rent under the contract, they are in no position to terminate the lease on account of plaintiff's claimed breach of it.

The McCabes deny that they had any duty to rebuild any improvements, or structures, on the land, and say that the lease contract contained no provision im-

posing any such duty, or obligation, on its lessor. They further say that the lease "is essentially a grazing lease", and, as proof thereof, refer to its paragraph "III" which reads as follows:

"Lessee specifically covenants and agrees that he shall in no event, lease, pasture and maintain, keep in excess of 100 head of cattle, or other animals total on this property during the term of this lease."

Said defendants' position must be upheld. If there is any basis for plaintiff's position that it was the McCabes' duty to rebuild the house, it must be found in our statutes, or in the lease itself. In this connection, see Alfe v. New York Life Ins. Co., 180 Okl. 87, 67 P.2d 947. At common law, a landlord had no such duty to his tenant; and plaintiff does not claim that Tit. 41 O.S. 1961, § 31 is applicable to this case. As said in Harvey v. Weisbaum, 159 Cal. 265, 113 P. 656, 657:

"The common-law rule, applicable *where land is the subject of the lease,* is that, *where there is a covenant on the part of the lessee to pay rent for the term,* and the buildings are destroyed by fire, *the tenant is not relieved from the payment of rent, unless he has protected himself by a covenant in the lease.* This rule was based, as stated by the common-law writers, upon the reason that, as the destruction is usually by means of an accident, for which neither lessor nor lessee is responsible, it is but equitable to divide the loss; and as the lessor must lose the property the lessee should lose the term; and upon the further reason that exemption from loss would tend to make the tenant less careful, as in many cases he would be benefited by the destruction of the premises, if the result would be to free him from the lease * * *."

In this connection, notice Barker v. Findley, 136 Okl. 55, 275 P. 1054, 1055. With reference to a landlord's duty to keep leased premises in repair, see Gordon v. Reinheimer, 167 Okl. 343, 29 P.2d 596, syll. 1. The lease in the present case contains no specific mention of the house on the land, whose legal description is written into it; and contains no provision of any kind for the lessor to keep the premises in repair or good order. (The lease's only provision for maintenance of any kind names the "lessee" as the obligor.) In the early case of Hanley v. Banks, 6 Okl. 79, 51 P. 664, it was said: "Where a lease contains no stipulation or covenant on the subject, no obligation on the part of the landlord to repair is implied, nor any warranty that the premises are or will continue to be suitable for the lessee's use or business, * * *". We think a fair analysis of the present lease's wording can only lead to the conclusion that "* * * the house was only an incidental part of the transaction * * *" as was said to be the case in Vale v. Trader, 5 Kan.App. 307, 48 P. 458, in which the court further said, concerning the house: "It is impossible to say how much, if anything, it added to the rental value of the land * * *". Notice the comment on this case in the annotation at 28 A.L.R. 1535, at p. 1543. As to relieving a lessee from a part, or all, of a rental payment, where the lessor has covenanted to repair the leased premises, see 38 A.L.R.2d 690, 691.

In 32 Am.Jur., "Landlord and Tenant", § 657 (p. 523) it is said:

"* * * The common law has always thrown the burden of repairs upon the tenant, although he may not be obligated to make them unless he covenants to do so. *If the tenant repairs the demised premises* to make them habitable, *he must do so at his own cost.* He takes the premises for better or for worse, and cannot involve his landlord in expense for repairs without his consent. *So unvarying is this doctrine that even a court of equity will not compel the landlord to expend, in making repairs, the money received by him upon fire insurance policies* after the destruction of the demised premises, *unless he has*

*expressly* agreed so to apply the proceeds. * * *." (Emphasis added.)

Since this subject lease of rural property contained no provision for the lessor to make any repairs, it specifically contemplated only the use of land for business purposes, i. e., grazing livestock, and it is not claimed that it is in the same category as a lease " * * * of a building intended for the occupation of human beings * *." covered by Tit. 41, § 31, supra, we think the principles of the common law above referred to must apply to it. Consequently, the McCabes' failure, or refusal, to rebuild the house on the leased land—with insurance money plaintiff's petition may, or may not, infer they collected—or with funds from any other source, did not constitute a breach of the lease contract. And in view of these principles, we cannot expand this lease's provisions to include any such obligation upon the landlord, or parties, referred to as the "Lessor" therein, notwithstanding plaintiff's position that paragraph "IV" (supra) thereof implies such an obligation. For the foregoing reasons, the cases cited by plaintiff, including Hooper v. Commercial Lumber Co., (Okl.) 341 P.2d 596, and McInteer v. Gillespie, 31 Okl. 644, 122 P. 184, do not apply. Nor do we think that the broad expressions used in Hanley v. Banks, 6 Okl. 79, 51 P. 644 with reference to covenants of quiet enjoyment apply to such an obligation. Nothing plaintiff's brief quotes from the case of Penny v. Fellner, 6 Okl. 386, 50 P. 123, is applicable to this case.

In his "PROPOSITION NO. 3", plaintiff asserts that a demand for payment must be made before a forfeiture can operate in Oklahoma. This obviously refers back to the allegations of his petition to the effect that the Red Oak Justice of the Peace Court had no jurisdiction in the forcible entry and detainer action the McCabes filed there against him, because they had not given him ten days notice to pay the $1200.00 rental, or to vacate the property. Irrespective of whether the McCabes did, or did not, give such notice

before commencing that action, and whether, or not, such failure would be a bar to said court's exercising jurisdiction, or would be a defense to plaintiff, we think such failure, if it occurred, furnished plaintiff no basis for invoking the extraordinary powers of a court of equitable cognizance in the present action, especially in view of his petition's allegations of facts indicating his disavowal to the McCabes, after the house burned, of any obligation to pay as much rent as the $1200.00 prescribed in the lease. Whether such facts, if proven in the forcible entry and detainer action, rendered useless, or unnecessary, any demand by the McCabes for plaintiff's payment of that prescribed rental, and a notice by them to him to quit (in this connection notice the discussion in Asher v. Hull, 207 Okl. 478, 250 P.2d 866, 871–872) as a prerequisite to their commencement of said action, can be determined in that action. Therefore, if plaintiff's position on that matter is correct, he has an adequate remedy at law; and his petition in this action of equitable cognizance fails to indicate the contrary.

The record in this case fails to show specifically whether, or not, in sustaining defendants' demurrer to plaintiff's petition, the trial judge considered any such forcible entry and detainer action, as plaintiff represents he did, in his "PROPOSITION NO. 2", but, as plaintiff set forth in said petition allegations concerning said action, he is in no position to complain if they received the judge's attention; in other words, if the trial court erred in (consciously or unconsciously) noting those allegations, plaintiff invited such error; and he cannot complain of it in this appeal.

Under his "PROPOSITION NO. 6", plaintiff argues in substance, that, in sustaining defendants' demurrer to his petition, the trial court committed error for the further reason that the plaintiff showed he had expended a total of $1500.00 in making repairs and improvements on the leased premises, and, under Tit. 15 O.S. 1961, § 235, as reflected in Great American

Reserve Ins. Co. of Dallas v. Strain, Okl., 377 P.2d 583 (and cases therein cited) defendants could not repudiate the lease, and also succeed to, acquire, or retain, such benefits. As pointed out by defendants, there is no agreement in the subject lease as to repairs or improvements on the leased premises, except the lessee's agreement set forth in said instrument's paragraph "II". In view of what we have hereinbefore said on this subject, and the authorities we have cited with reference to the applicability of the common law rule (32 Am.Jur., § 657, supra) we must hold (consistent with defendants' argument) that plaintiff was not entitled to recoupment of any such expenses, and, by the same token, any benefits defendants might receive therefrom, in the event they recover possession of the property, need not be regarded as a factor in the enforcement of their right to terminate the lease on account of plaintiff's default in rental payment.

■ Under his "PROPOSITION No. 4" plaintiff refers to the well-settled principle that time is not of the essence in performing a contract, unless clearly shown, by its provisions, to have been the intention of the parties thereto; and he calls attention to the fact that the subject lease contract contains no provision for forfeiture. Plaintiff's presentation fails to demonstrate what relation such matters may have to the court's ruling he complains of, or that they support his claim of error therein. It therefore requires no further consideration, under the well-settled rule followed in Irwin v. Irwin, Okl., 416 P.2d 853 (4th syll.) and other cases.

In plaintiff's "PROPOSITION NO. 8", he complains that the trial court's ruling deprives him of his constitutional rights. He advances no argument in support of this proposition, and merely cites Art. 2, §§ 6 and 7 of the Oklahoma Constitution. This presentation is also inadequate under Irwin v. Irwin, supra.

■ Plaintiff's propositions numbered "9" and "10" deal with the matter of

his proffered tender, in the trial court, of the $1200.00 rental the lease prescribed for his payment on November 1, 1964. As, in view of the proper interpretation of the subject contract, hereinbefore indicated, it was plaintiff's obligation, under its terms, to pay that rental on said date (regardless of the other matters referred to in his petition), and his discharge of said obligation was long overdue and delinquent, he, accordingly, was in violation, or breach, of said contract, at the time he tendered its payment in this case; and the trial court committed no error in denying him the opportunity of making the tender at that late date.

■ Plaintiff's "PROPOSITION NO. I" seems to be directed at alleged error in the procedure of filing and ruling upon defendants' oral demurrer to plaintiff's petition on the day scheduled for the trial of the case. It appears to be plaintiff's position that this was irregular—and, in view of Tit. 12 O.S. 1961, § 263, unorderly, or untimely—since defendants had already filed their answer to his petition, without ever having previously demurred to it. As hereinbefore noted, the record of the trial proceedings reflects that plaintiff's counsel argued this demurrer, without any apparent objection to its filing or consideration at that particular time. We think that, under the circumstances, plaintiff had neither laid a trial court predicate, nor has he shown a substantial violation of a constitutional or statutory right (especially in view of the herein adjudicated failure of his petition to state a cause of action) as a necessary prerequisite for consideration of this claimed error in procedure. His argument therefore presents no prejudicial error for review here. See Badgwell v. Lair, Okl., 325 P.2d 968.

■ Since, as hereinbefore indicated, plaintiff was in no position to invoke the powers of a court of equitable cognizance to grant him any relief, his propositions numbered "5" and "12", like all of his other propositions, demonstrate no ground for reversing the trial court's judgment.

Equity follows the law; and where the rights of parties are clearly defined and established by law, equity has no power to change or unsettle those rights, nor to create a right, where none exists. See Sautbine v. Keller, Okl., 423 P.2d 447, 451.

Said judgment is therefore affirmed.

JACKSON, C. J., and DAVISON, BERRY and LAVENDER, JJ., concur.

IRWIN, V. C. J., and WILLIAMS and McINERNEY, JJ., dissent.