In the Matter of the ADOPTION OF David Andrew GOODSON, III.

Stephen R. GILLILAND and Margery Gilliland, Appellants,

v.

David Andrew GOODSON, Jr., Appellee.

No. 51372.

Court of Appeals of Oklahoma, Division 2.

Oct. 3, 1978.

Released for Publication by Order of Court of Appeal Oct. 26, 1978.

Bob Funston by Daniel J. Boudreau, Broken Arrow, for appellants.

Robert E. Parker, Tulsa, for appellee.

BRIGHTMIRE, Judge.

The biological mother of five-year-old David Andrew Goodson, III, Margery Gilliland, and her current husband, Stephen R. Gilliland, M.D., petitioned the court for an order determining the youngster eligible for adoption by the stepfather without consent of the natural father, David Andrew Goodson, Jr. The trial court, after hearing the evidence, denied petitioners' relief and they appeal. We affirm.

I

In order to cut off respondent's parental right to object to his son's adoption by the physician, petitioners invoked the provisions of 10 O.S.Supp. 1974 § 60.6(3) which authorize the adoption of a minor without the consent of a natural parent who has, among other things, "willfully failed, refused or neglected to contribute to the support of his child, as provided in the decree of divorce, or according to his financial ability if no provision for support is provided in the decree, for a period of one (1) year next preceding the filing of a petition for adoption of such child; . . . "

The trial judge found from the trial wrought evidence as a fact, however, that respondent "is not guilty of willful failure to pay child support as alleged" by applicants, but instead "that there was an overage of payment from the evidence at the time the petition for adoption was filed . . . ." Supplementing these findings was a further one that respondent had been physically disabled for part of the year in

question because of an accidentally inflicted gunshot wound October 13, 1976.

The petition here was filed April 13, 1977 alleging that the natural father had not provided the natural mother with any support money for David for over a year—since April 5, 1976. Evidence there was that on the latter date the natural father deposited in court his last monthly $75 child support payment as required by the divorce decree. Respondent, on the other hand, says that in May 1976 the mother requested him "to buy the baby a new waterbed" costing $80 and if he did so she would consider the expenditure as taking care of the May child support payment. The father bought the bed. And, according to respondent, there were other times during the year in question that he gave the mother $10 or $20 when she said she needed money and on January 23, 1976—six months after the divorce was granted—he also paid, at her request, a $393 automobile repair bill she owed, again with the thought that it would be credited on his child support obligation.

## II

■ Petitioners argue first of all that the decision of the trial judge is not sustained by sufficient evidence. We disagree. Deprivation of natural parental rights authorized by 10 O.S.1971 § 60.6(3) has been given a strict construction by the Oklahoma Supreme Court as evidenced by the decision in *Mann v. Garrette,* Okl., 556 P.2d 1003 (1976) holding that a payment made shortly before an adoption petition was filed was sufficient to defeat petitioners' attempt to avoid necessity of the natural father's consent even though the payment was the first one made for 21 months and was made at the suggestion of his lawyer for the express purpose of interrupting the one-year non-support period. And findings made by the trial court will not be disturbed unless clearly against the weight of the evidence. *DeGoyler· v. Chesney,* Okl., 527 P.2d 844 (1974).

■ Conflicts between the testimony of respondent and his former wife are con-

siderable. While one of the trial court's findings may be questionable, we are of the opinion that on the whole no substantial basis exists for concluding that the result reached by her is clearly contrary to the weight of the evidence.

## III

■ Petitioners' second and third contentions address the admission of certain evidence. One complaint is that because respondent was not an expert witness the trial court should not have allowed him to testify that he did not believe he was physically or mentally able to hold down a full-time job. The admission was not error. Obviously the witness was not a medical expert. But this did not preclude him from testifying about his own condition. *Aetna Life Ins. Co. v. Wilson,* 190 Okl. 363, 123 P.2d 656 (1942). This was material evidence for the trial court to consider in attempting to achieve a just disposition of the dispute.

■ The other ruling said to have been improper was the admission of a "receipt" dated January 23, 1976 for the money respondent paid to get his former wife's car repaired. The short answer to this is that the exhibit was not a receipt but a "garage repair order" detailing the work done, the parts installed, and the charges made—information corroborated by the natural mother's own testimony. If indeed there is something on the exhibit showing payment of the debt it is not apparent, and there is no testimony identifying any marks on the document as proof the repair bill has been satisfied. But whether the paper is a receipt or not it was relevant evidence and its admission was therefore not an error.

## IV

Petitioners' last proposition is that they were saddled with an excessive burden of proof. Evincing this, they say, is a statement made by the trial judge when she handed down her decision which according to petitioners was "that any evidentiary conflicts must be resolved in favor of the

rights of the natural father." Under this "rule," concluded petitioners, "the trial court was required to render a decision for the appellee and natural father if he produced any evidence at all in his behalf." Laying waste to this ill-fated plea is a verbatim transcript of what the trial judge actually said. Not only did she not refer to or apply such a rule as suggested by petitioners but what she did say demonstrated she had a reasonably correct understanding of the law she was bound to apply. Said she:

> "First, in considering an adoption matter, at any point in the proceeding, the cases dictate that the adoption statutes must be strictly construed in favor of the rights of the natural parent as against those persons who seek to interfere with those rights. And, secondly, that where there is conflict in the testimony, it is the province of the trier of the facts to resolve those conflicts."

■ This sums it up pretty well, though perhaps the term "duty" would be a more appropriate word than "province." Certainly the appellate courts of this state have demonstrated with unsurpassed clarity that the rights of a natural parent are to be regarded with a reverence bordering on sacredness and are not to be judicially revoked on whim, suspicion, or equivocal or insubstantial evidence. Another way of putting it is that if there exists a reasonable doubt about whether the conduct of a natural parent has brought him within the letter of a parental right forfeiting statute, that doubt should be resolved against severance of his right.

AFFIRMED.

BACON, J., concurs.