Drenda Sue WEBB, Appellant,

v.

Emory Edward WILEY, Jr., and Patricia Mae Wiley, Appellees.

No. 52673.

Supreme Court of Oklahoma.

July 24, 1979.

Rehearing Denied Oct. 1, 1979.

318

R. C. Garland, Jr., Pauls Valley, for appellant.

Don Frankenberg, Lindsay, for appellees.

IRWIN, Vice Chief Justice.

Presented for review is a trial court order denying appellant's Application to Withdraw Consent to Adoption of her child by appellees and an Interlocutory Decree of Adoption entered pursuant to 10 O.S.1971, § 60.15.

Appellant's child was born in August, 1977, and on February 28, 1978, appellant appeared before a district judge and executed her consent to the adoption. On March 3, 1978, appellees filed their petition for adoption and on March 15, 1978, appellant filed her application to withdraw consent. After a full hearing the trial court denied appellant's application to withdraw consent and entered an Interlocutory Decree of Adoption.

Appellant contends that Oklahoma's provisions for adoption of children born out of wedlock are unconstitutional since they deprive the father of the right to object to the adoption. Appellant argues that Oklahoma statutory law as it now stands will permit the adoption of an illegitimate child without

the consent of the putative father if the mother has given her consent freely. She argues that such a scheme violates the constitutional rights of the putative father as recognized in *Stanley v. Illinois,* 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972); and *Bailey v. Patterson,* 369 U.S. 31, 82 S.Ct. 549, 7 L.Ed.2d 512 (1962).

 Because of the posture of this case we need not determine whether appellant correctly interprets Oklahoma's statutory scheme or whether such an interpretation would render it unconstitutional. The threshold issue is appellant's standing to assert the constitutional rights of the putative father because, ordinarily, constitutional rights are personal and may not be asserted vicariously. *Broadrick v. Oklahoma,* 43 U.S. 601, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973). Although various exceptions have been carved out of this general principle, they are only because of "the most weighty countervailing policies." *Broadrick,* supra. None of them are applicable in the facts of the instant case. Appellant's child was born out of wedlock and the only positive evidence introduced as to the identity of the putative father was the testimony of the appellant. The putative father himself denied under oath that the child was his. He disclaimed any "rights" to the child. To allow the appellant standing to assert the alleged constitutional rights of another individual who has refused to assert them would undermine the salutary principles upon which the doctrine of standing is based. We hold that appellant had no standing to challenge Oklahoma's statutory scheme for adoption of children born out of wedlock based upon alleged violations of the constitutional rights of the father.

 Appellant contends the trial court committed reversible error in failing to allow appellant the right to examine the investigative report prepared by DISRS. Appellant argues that the information in the report would have provided her with vital information concerning the names and references allegedly furnished by appellees. She argues such information may well have gone to their credibility and fitness and would have a bearing on what would and would not be in the child's best interest.

The record discloses that appellant was furnished the investigative report during the hearing. Appellant has failed to show in what matter she was prejudiced by not receiving the reports earlier, and her argument is not sufficient to overcome the presumption in favor of the correctness of the judgment of the trial court that appellant was not prejudiced. *Keel v. MFA Mutual Insurance Co.,* Okl., 553 P.2d 160 (1976).

 The remaining issues raised by appellant all relate to the trial court's application of the law to the evidence. 10 O.S.1978 Supp. § 60.10 provides that a withdrawal of any consent to adoption filed in connection with a petition for adoption shall not be permitted unless the court "finds that the best interest of the child will be furthered thereby." In addition, we held in *In Re Adoption of Graves,* Okl., 481 P.2d 136 (1971) that the natural parent may set the consent aside where fraud, coercion, misrepresentation, or undue influence is shown.

Appellant produced evidence tending to establish that she was induced into consenting to the adoption when Mrs. Wiley (appellee) informed her that her (appellant's) step-mother was trying to have DISRS take the child. Mrs. Wiley, on the other hand, testified no such conversation took place. Appellant contended that Mrs. Wiley had promised that she would be able to see the child, a promise which allegedly had not been kept. Appellees denied making such a promise, or that appellant had ever been denied a request to see the child. A statement by the district judge who witnessed the consent was admitted by stipulation and showed that appellant did not appear to be under stress. It also indicated that appellant expressed the opinion that it would be better if she did not see the child very often. The trial court heard evidence about the circumstances of both homes as well.

The trial court determined that appellant consented to the adoption voluntarily without coercion, undue influence or fraud, and that the best interest of the child would not

be furthered by withdrawing the consent to adoption. In reviewing that decision, in a case of equitable cognizance, this Court will weigh the evidence to insure that the trial court order is supported by sufficient evidence, but we will not reverse that decision unless it is against the clear weight of the evidence. *Crowell v. Whitmire*, Okl., 548 P.2d 221 (1976). The record contains ample support for the conclusion reached by the trial court, and its order is affirmed.

AFFIRMED.

LAVENDER, C. J., and BARNES, SIMMS, HARGRAVE and OPALA, JJ., concur.

WILLIAMS, HODGES and DOOLIN, JJ., concur in part, dissent in part.

DOOLIN, Justice, concurring in part, dissenting in part.

I concur with the majority, appellant has no standing to challenge the validity of Oklahoma's problematical statutory scheme allowing adoption of an illegitimate child without the consent of the father.

I strenuously dissent to the majority's affirming the trial court's obdurate refusal to allow appellant to withdraw her consent to Amber's adoption prior to any decree's being issued.

A parent's unfaltering consent to the adoption of her child, freely and understandingly given, is an absolute. Lacking such consent, an adoption is void. In *Adoption of Robin, 571 P.2d 850 (Okl.1977)* we renewed the judicial tenet that adoption statutes must be strictly construed in favor of a natural parent where the controversy is between the natural parent and persons seeking to destroy that status. The majority does not observe that tenet.

Section 60.10 was before this court in *In re Adoption of Graves, 491 P.2d 136 (Okl. 1971)*. There we discussed the portion of that statute providing "[t]he entry of the interlocutory or final decree of adoption renders any consent irrevocable". We held this did not apply to withdrawal of consent

on the basis of fraud. In the present case appellant testified to conversations wherein she was influenced to consent to the adoption by appellees by promises she could always see the child, and by vague references to actions of her stepmother to have the child taken from her. While this is not blatant fraud, any inducement to persuade a parent to consent to giving up her child is inherently coercive. These facts, although reason enough to allow appellant's timely withdrawal of her consent, are outside § 60.10.

Within the perimeters of § 60.10 appellant also should prevail. Under this statute appellant's consent was not irrevocable. Neither the interlocutory nor the final decree of adoption had been entered. Appellant withdrew her consent before any action had been taken in the adoption. At the time of appellant's withdrawal of consent Amber was either her child, or no one's child.

*Stanley v. Illinois, 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972)* heralded the much cited constitutional principle that "[t]he rights to conceive and to raise one's children have been deemed 'essential', *Meyer v. Nebraska, 262 U.S. 390, 399, 43 S.Ct. 625, 626, 67 L.Ed. 1042 (1923)*, 'basic civil rights of man,' *Skinner v. Oklahoma, 316 U.S. 535, 541, 62 S.Ct. 1110, 1113, 86 L.Ed. 1655 (1942)*, and 'rights far more precious than property rights.'" During the interim period when Amber theoretically may belong to no one, the natural mother surely enjoys a superior position, based on this essential right. Appellees as prospective adoptive parents have no comparable claim to Amber. There is no constitutional right to adopt a child.

Under this statute the best interests of the child are controlling. The best interests of a child generally lie with her parent. This perdurable theory is not extinguished by the signing of a piece of paper, especially where it is admitted by investigatory personnel that the prospective adoptive parents

may not be acceptable.[1] How can this court hold Amber's best interests will be served by placing her with strangers whose own fitness is shown to be in grave doubt by the evidence and who have no right to the adoption as against a natural parent?

The record evidences no material difference between care of child to be given by appellant or by appellees. There is no evidence Amber's best interests would not be served by allowing appellant to withdraw her consent, or perhaps to adopt her own child.

This is not a divorce proceeding where both parties as parents have an equal right to custody. There, of course, trial court must make a "best interests" decision that is totally discretionary and oftentimes arbitrary. Neither is this a termination proceeding. There has been no showing appellant is unfit.

A parent should be permitted to withdraw her consent unless child's best interests dictate otherwise. A recanted voluntary termination must not be the basis of an involuntary termination when consent is withdrawn before any decree of adoption is issued. Involuntary termination must follow statutory procedures.[2]

The trial court, upheld by the majority, has in effect terminated appellant's parental rights without providing procedural due process through Oklahoma's statutory scheme.

I am authorized to state that Justice WILLIAMS and Justice HODGES concur in the views herein expressed.

---

1. Adoption was ordered on a probationary basis for six months so that appellees might work out their marital problems.

2. 10 O.S.1978 Supp. § 1101 et seq.