In the Matter of JEFFREY S. and
Amanda S., Alleged
Deprived Children.

STATE of Oklahoma, ex rel.
DEPARTMENT OF HUMAN
SERVICES, Appellant,

v.

EUGENIA T.B. and Michael
H.B., Appellees,

Kenneth J. and Debra D., Intervenors.

No. 58811.

Supreme Court of Oklahoma.

May 3, 1983.

Rehearing Denied June 7, 1983.

Thomas H. Tucker, Pamela K. Padley, Oklahoma City, for appellant.

Roma McElwee, Oklahoma City, for appellees.

E. Stephen Briggs, Coleman, Walke & Briggs, Del City, for appellee children.

Jerry T. Pierce, Bartlesville, for intervenors.

LAVENDER, Justice:

The subjects of this appeal are two minor children, Jeffrey S., born November 5, 1978, and Amanda S., born April 19, 1980, both of whom were adjudicated to be deprived, and the parental rights of their natural parents were judicially terminated.

The chronology of events culminating in this appeal are as follows:

On June 2, 1982, the Juvenile Division of the District Court upon hearing committed custody of the children to the Oklahoma Department of Human Services (DHS) with authority to place them for adoption, with the further provision that, "Court reserves right to consent to adoption when appropriate." At the hearing, Eugenia T., one of the appellees and wife of the other appellee, Michael H., appeared as attorney of record for the children by court appointment as a member of the Public Defender's office. Eugenia T. announced in open court, "Judge, I'd like to adopt these kids." The presiding judge told her he wanted her to think about it and to talk to her husband.

On June 4, 1982, DHS orally offered the children to Kenneth J. and Debra D., husband and wife and intervenors in this cause, who had completed adoptive home studies conducted by DHS and who had been approved as prospective adoptive parents by DHS.

On June 7, 1982, the children were placed in the home of Kenneth J. and Debra D. for the purpose of adoption with their understanding that the children were placed "at risk" in that the decree terminating the rights of the natural parents, if unappealed, could not become finally effective for thirty days.

On June 8, 1982, Eugenia T. and Michael H. filed an Application for Custody for Purposes of Adoption in the district court, seeking custody of the children for the purpose of adoption. On the same day, the trial

court determined that it was in the best interest of the children that their custody be placed with Eugenia T. and Michael H. for the purpose of adoption, ordered custody to be placed in them on filing a petition for adoption, and further ordering DHS to relinquish physical custody to Eugenia T. and Michael H. Upon learning of the court order, an attorney for DHS advised the trial judge by telephone of the previous placement of the children by DHS and requested the judge to vacate or stay the court order, which requests were orally denied.

On June 9, 1982, Eugenia T. and Michael H. filed a petition for writ of habeas corpus. A writ was signed by a district judge and set for hearing to be had on June 10, 1982.

On June 10, 1982, DHS filed an Application and Petition for Writ of Prohibition in the Oklahoma Supreme Court. This Court entered an order which temporarily stayed the effectiveness of the trial court's June 8, 1982, order, giving the trial court an opportunity for hearing on the issue. DHS filed a Motion to Vacate the trial court's order of June 8, 1982. The district court held a hearing on the writ of habeas corpus, determined that the stay order entered by this Court prevented the trial court from acting, and set the motion to vacate and the writ for hearing on June 14, 1982.

On June 14, 1982, the trial court declined to hear testimony and refused to vacate his order of June 8, 1982.

On June 22, 1982, DHS filed in this Court a Petition in Error to appeal from the trial court's order of June 14, 1982.

On June 28, 1982, this Court assumed jurisdiction of the petition for writ of prohibition, denied prohibition, and directed the trial court upon notice to DHS to hold a hearing within fifteen days on the question of change of temporary custody presented by the application for custody for purposes of adoption filed by Eugenia T. and Michael H. By separate order, this Court ordered that the order of the trial court of June 8, 1982, be stayed until after the court ordered hearing.

On July 12, 1982, Eugenia T. and Michael H. filed their Petition for Adoption of the children. They also filed their second Petition for Writ of Habeas Corpus, which writ was issued by the trial court and set for hearing on July 13, 1982.

On July 13, 1982, the court below held an evidentiary hearing on the Application for Custody for Purposes of Adoption ordered by this Court on June 28, and upon the writ of habeas corpus filed on July 12.

At the conclusion of the hearing on July 13, 1982, the court below announced its decision from the bench in which the court: (a) determined from the evidence that both families would in fact be fine adoptive families; (b) found that DHS "far exceeded the authority that they have under the law and they have, by their actions, placed these children in a very tenuous situation." The trial court further said:

"They cannot be heard to complain by their actions that these children have been damaged any more because it's been by their own actions that these children have been placed in the home that they've been placed as long as they have.

"The children are placed at risk. The testimony is clear that this far exceeded the authority that they have under the law of the State of Oklahoma and no party should be allowed to benefit from that.

"The Department undoubtedly has and had the best interest of the children at heart. I give them full credit for that but I do not believe that they followed the law and that's what this Court must do, and by their failure to follow the law we have the situation that we have here today.

"Further, by their own actions, they have compounded the trauma, if there is a trauma to these children, by allowing them to be placed in this situation for as long as they have.

"Both of these families are fine families. I'm sure they're both credits to their community but the trauma, if there is a trauma to these children, has been compounded by the actions of the prospective adoptive parents with whom they have been placed.

"The most that this Court can find is that the Department of Human Services placed these per the affidavit and it constitutes nothing more than a foster placement at this point in time.

"(Eugenia T. and Michael H.) have, in fact, filed a petition for adoption, they have come before this Court. This Court did, in fact, reserve the right to consent. It will therefore be the Order of this Court that the custody of the two minor children, Jeffrey and Amanda, should be and is hereby placed in (Michael H. and Eugnia T.) instanter."

The Journal Entry signed by the trial judge finds and determines (a) that the trial court has continuing jurisdiction over the children and authority to make placement decisions regarding said children; (b) that the only adoption petition filed is that of Michael H. and Eugenia T.; (c) that DHS, in purporting to place the children in a "trial adoptive home," acted without authority of law or procedure, "and the actions of the Department of Human Services cannot be allowed to act wrongfully without regulation by the Court"; (d) that after reviewing home evaluations and hearing testimony of both prospective adoptive families, "the Court finds that it would be in the best interest of the children herein to be placed with Eugenia T. and Michael H. instanter for purposes of adoption"; that the children will easily adjust to a change in placement, "but if emotional trauma does result to the children, that result was directly caused by the wrongful actions of the Department of Human Services and compounded by the actions of the family they were placed with on a temporary basis"; (e) the trial court journal entry further directs that custody be placed with Eugenia T. and

Michael H. for the purpose of adoption, "in the best interest of said children."

The trial court granted the writ of habeas corpus prayed for by Eugenia T. and Michael H. and directed DHS to deliver the children to them on a day certain.

From the trial court's order of July 13, 1982, the State of Oklahoma ex rel. Department of Human Services (DHS) filed this appeal. Kenneth J. and Debra D., who appeared personally and by counsel in the court below, obtained leave of this Court to intervene and have filed in this Court their petition in error and a separate application for an injunction to enjoin Michael H. and Eugenia T. from adopting the children. Upon the application of DHS the order of the trial court of July 13, 1982, has been stayed by order of this Court, pending determination of the matters now before us.

Michael H. and Eugenia T. have moved to dismiss the appeal by DHS. That motion and the application for injunction of Kenneth J. and Debra D. are before us, as well as the appeals from the trial court's order of July 13, 1982.

The issues which are necessary for determination of the matters before us will be considered in turn.

I.

DOES THE DEPARTMENT OF HUMAN SERVICES WHICH WAS NOT A FORMAL PARTY IN THE PROCEEDINGS BELOW HAVE STANDING TO APPEAL FROM THE JUDGMENT OF THE TRIAL COURT ENTERED ON JULY 13, 1982?

We answer in the affirmative.

■ The first question to be considered is whether DHS, which was not a party to the proceedings below, but was an active participant therein, has standing to appeal from the judgment of the trial court which on July 13, 1982, placed the children for adoption with a family other than the one selected by DHS and ordered the custody of

the children to be delivered to the trial judge's designee for adoption.

Title 10 O.S.1981, § 1109 c provides: "The district attorney shall prepare and prosecute any case or proceeding within the purview of Chapter 51 of this title" [10 O.S.1981, §§ 1101–1506, pertaining to delinquent, dependent and neglected children].

During the hearing before the trial court on July 13, 1982, the district attorney appeared at the hearing, taking a passive role, but reserving the right to actively participate in the hearing proceedings should he deem such appropriate. No other participation in the proceedings or in the appeal therefrom by the district attorney is disclosed in the record before us.

The Oklahoma Public Welfare Commission (being the same as the Commission for Human Services, 56 O.S.1981, § 162.1) is by the provisions of 56 O.S.1981, § 236 authorized to employ attorneys to advise the Commission, Director and Department Personnel on legal matters, and said attorneys, "may appear for and represent the Commission, Director and Department in legal actions and proceedings."

Thus, the standing of DHS to maintain an appeal in cases such as the one at bar is not expressly conferred by legislative enactment, but neither is it legislatively denied.

Title 12 O.S.1981, § 952 provides in part:

"(a) The Supreme Court may reverse, vacate or modify judgments of the District Court for errors appearing on the record, and in the reversal of such judgment may reverse, vacate or modify any intermediate order involving the merits of the action, or any portion thereof.

(b) The Supreme Court may reverse, vacate or modify any of the following orders of the District Court, or a judge thereof:

1. A final order;

2. An order that discharges, vacates or modifies or refuses to vacate or mod-ify a provisional remedy which affects the substantial rights of a party; * *."

In *Cleary Petroleum Corp. v. Harrison,*[1] we said:

"One who is not aggrieved by a court's decision—however erroneous—may not bring an appeal from it. Case law defines an 'aggrieved party' as one whose pecuniary interest in the subject-matter is directly and injuriously affected or one whose right in property is either established or divested by the decision from which the appeal is prosecuted. Generally, if the judgment sought to be reviewed does not, by its own force, operate to impose a burden or obligation, and it has no binding effect upon any right, interest, person or property of the appealing party, that appellant is not deemed aggrieved. The effect of a judgment must be direct, substantial and immediate, rather than contingent on some future event."

The question thus becomes whether the custodial rights conferred upon DHS by virtue of the trial court order placing the children with DHS for adoption, the subsequent placement by DHS pursuant to said court order in the home of prospective adoptive parents who had been approved as prospective adopting parents, and the subsequent removal of said children from said home by order of the trial court, placed DHS in the posture of being an "aggrieved party" whose rights in property has been divested by the decision from which the appeal is prosecuted.

While the custodial right of DHS is not a vested property right in the sense that that term is commonly understood (there can be no vested property right in the custody of children), it is a property right in the sense that there is a public right or policy that the custody of children lawfully and properly placed for adoption not be arbitrarily or capriciously withdrawn without regard to

1. Okl., 621 P.2d 528 (1980).

the welfare of the children and without a prior judicial determination that the welfare of the children impel its withdrawal. The responsibility for and the implementation of that policy is legislatively invested in DHS, and as the custodian of that policy, DHS became by reason of the order of the trial court, "an aggrieved party." Where administrative agencies are engaged in a policymaking function, or represent the public interest in the proper enforcement of the law being administered, and where the public as well as private parties have an interest in upholding the order of act of the agency, the agency itself has been held to be a proper party to represent this public interest where its order is under review.[2]

We therefore hold that DHS has standing to prosecute its appeal.

## II.

DID THE JUDGE OF THE JUVENILE DIVISION OF THE DISTRICT COURT HAVE THE POWER AND AUTHORITY TO WITHDRAW THE PLACEMENT OF THE CHILDREN FOR ADOPTION MADE BY DHS, TO ORDER THE CHILDREN TO BE PLACED FOR ADOPTION BY THE TRIAL JUDGE'S DESIGNEES AND TO ORDER DHS TO SURRENDER CUSTODY TO THE DESIGNEE FAMILY WITHOUT A PRIOR SHOWING THAT THE WELFARE OF THE CHILDREN REQUIRES THE TRANSFER OF CUSTODY FOR ADOPTION?

We answer this question in the negative.

■ The children had been judicially determined to be deprived children. The rights of their natural parents were judicially terminated. The judge of the district court placed custody with DHS reserving the right to approve the adoption. DHS did in fact place said children for adoption with a family approved by DHS as prospective adoptive parents. Approximately five weeks after the placement by DHS, the trial court upon hearing determined that both prospective adoptive families were well qualified and suitable as adoptive parents, but concluded that DHS had exceeded its authority in the original placement of the children and that the judge's designee family had a pending petition for adoption while the DHS placement family did not, and ordered the children to be given over to the custody of the judge's designee family, "in the best interest of the children."

It appears from the record that the trial judge was prompted in his decision more by what he perceived to be a usurpation of unauthorized powers exerted by DHS rather than by an objective determination of what action should be taken in the best interests of the children.

The main thrust of juvenile actions is to serve the best interest of the child.[3]

Title 10 O.S.1981, § 1116 provides, in part:

"(a) The following kinds of orders of disposition may be made in respect to wards of the court:

(3) The Court may commit the child to the custody of the Department (DHS);

. . . .

(b) . . . If the court terminates the rights of a parent and commits the child to an individual or agency, the court may invest in such individual or agency authority to consent to the adoption of the child. *Provided, that where the court commits the child to the Department, it*

---

**2.** 2 Am.Jur.2d Administrative Law, § 774; *Workmen's Compensation Board of Kentucky v. Abbott*, 212 Ky. 123, 278 S.W. 533, 47 ALR 789 (1925); 117 ALR 216; *Gonzales v. New Mexico State Board of Embalm. etc.*, 63 N.M. 13, 312 P.2d 541 (1957); see also 10 ALR 385—Right of state or public officer to appeal from an order in habeas corpus releasing one from custody.

**3.** *Matter of J.L.*, Okl., 578 P.2d 349 (1978); *Barriner v. Stedman*, Okl., 580 P.2d 514 (1978); *State ex rel. Dept. of Inst. Soc. & R. Serv. v. Griffis*, Okl., 545 P.2d 763 (1976); *DeGolyer v. Chesney*, Okl., 527 P.2d 844 (1974).

*shall vest the Department with authority to place the child and upon notice to the court that an adoption petition has been filed concerning said child, invest the Department with authority to consent to the adoption of the child, and the jurisdiction of the committing court shall terminate."* (Emphasis added.)

Section 1133 provides, in part:

"A. After parental rights have been terminated, a court may award custody of the child to any qualified person or agency with authority to consent to the adoption of the child, *or the court, in its discretion, may reserve the authority to consent to the adoption of the child; ....*" (Emphasis added.)

Title 10 O.S.1981, § 1135 provides, in part:

"(a) The Department (DHS) shall review and assess each child committed to it to determine the type of placement best suited to the child, .... Such review and assessment shall include an investigation of the personal and family history of the child, and his environment, and any physical or mental examinations considered necessary.

\* \* \* "

Section 1115.1 enjoins upon DHS the preparation of a placement plan for the child.

■ The trial court, having placed the children with DHS for adoption, and DHS having in turn placed the children with Kenneth J. and Debra D. under a plan of placement promulgated by it, we hold that the trial court had no power or authority to withdraw the placement of the children from Kenneth J. and Debra D., or to order the children placed with the trial judge's designee without a prior judicial determination that the best interests of the children,

upon consideration of their temporal, mental, and moral welfare under the provisions of 10 O.S.1981, § 1116.1, required judicial incursion into the placement arrangements made by DHS. A mere weighing of competing interests or qualifications between prospective adoptive parents is no criterion. As we said in *Barriner v. Stedman*,[4] (518): "An adoption procedure, while guided by a consideration of the best interests of the child, was not intended, nor statutorily required, to weigh every competing interest among various families. To do so would create conflicts which would frustrate the purpose of adoption in the first place."

Here, DHS performed the duties enjoined upon it by statute in a lawful manner and as specifically authorized by the district court. The record is devoid of even an intimation that the placement of the children by DHS was not made in the best interests of the children. The evidence and the findings of the trial court are all to the contrary, and the trial court abused its discretion in ordering the children removed from the custody of the family with whom they had been placed by DHS,[5] and contrary to the clear weight of the evidence.[6]

The decisions we have made here are not altered by the fact that the trial judge, in the placement of the children with DHS for adoption, reserved the right to consent to an adoption as authorized by § 1133. The authority to consent or to withhold consent to an adoption in the exercise of sound judicial discretion may be exercised by the district court when and if that issue is ripe for determination.

Neither does the filing of a petition for the adoption of the children by Eugenia T. and Michael H. nor the placement of the children by DHS with Kenneth J. and Debra D. for adoption give either prospective adoptive families any vested right in the children. Under the statutory scheme for

---

4. Footnote 3.

5. *Id.*

6. *DeGolyer v. Chesney, supra*, (850); *Matter of Adoption of Goodson*, Okl.App., 585 P.2d 1130 (1132) (1978); *Webb v. Wiley*, Okl., 600 P.2d 317 (320) (1979); *Matter of J.L., Supra*, (352).

adoption of minors in Oklahoma, either may petition the court for adoption of the children.[7]

## III.

## DID DHS HAVE AUTHORITY TO PLACE THE CHILDREN FOR ADOPTION WITHIN THIRTY DAYS FROM THE DATE OF THE COURT TERMINATION OF PARENTAL RIGHTS?

We answer in the affirmative.

█ Appellees contend, and the trial court apparently found, that DHS did not have authority to place the children with Kenneth J. and Debra D. for adoption within the thirty day period after court termination of parental rights. We find no merit in this assertion. No statutory prohibition of placement during this period has been found and no authority in support of any prohibition has been offered. Assignments of error presented by counsel in their brief, unsupported by convincing argument or authority, will not be considered on appeal, unless it is apparent, without further research, that they are well taken.[8]

## IV.

Regarding the challenge directed to the qualification of Eugenia T. to petition for the adoption of these children (because she had served as court appointed attorney on behalf of the children at the hearing on the termination of parental rights of the children's natural parents), we do not deem such question ripe for appellate review at this time and therefore decline to express an opinion as to that issue.

While the issue is not before us, in the interest of avoiding a further prolongation of this cause by future appeals, we strongly urge that the Judges of the District Court of Oklahoma County, Oklahoma, disqualify from any hearing upon any petition for adoption of Jeffrey S. and Amanda S. so long as Eugenia T. manifests an interest in adopting the children. In this connection, we observe that under the provisions of 19 O.S.1981, § 138.2 the Public Defender and Assistant Public Defenders of Oklahoma County, Oklahoma, are appointed by the judges of the courts of record of Oklahoma County, and continue to serve at the pleasure of said judges. While we are confident that any judge presiding over such adoption proceedings would not be influenced by the relationship between such judges and members of the public defender's office, such disqualification would avoid the possible suggestion of impropriety which might be raised by reason of such relationship.

The judgment of the court entered on July 13, 1982, on the Application for Custody for Purposes of Adoption and on the Writ of Habeas Corpus is hereby reversed. The motion of Michael H. and Eugenia T. to dismiss the appeal of DHS is denied. The application of Kenneth J. and Debra D. for an injunction enjoining Eugenia T. from adopting the children is denied.

BARNES, C.J., and IRWIN, HARGRAVE and OPALA, JJ., concur.

HODGES, J., concurs in result.

SIMMS, V.C.J., and DOOLIN and WILSON, JJ., concur in part and dissent in part.

SIMMS, Vice Chief Justice, concurring in part, dissenting in part:

I agree with the majority that the application by Kenneth and Debra for injunctive relief to prevent Eugenia and Michael from adopting these children should be denied. I must dissent however, to the other major points of the opinion.

I do not agree that the Department of Human Services (DHS) has standing to prosecute this appeal. It was only the court named custodian of these children and as such is not a party.

---

7. *State ex rel. Dept. of Inst. Soc. & R. Serv. v. Griffis, supra.*

8. *Bradley v. McCabe,* Okl., 438 P.2d 468 (1967).

I am not persuaded by the majority's "aggrieved party" reasoning. The public interest involved in this matter as well as the authority to prosecute the action below and on appeal is reposed in the district attorney by 10 O.S.1981 § 1109.

In keeping with that position, DHS has spent much time and effort in this court seeking declarations of non-party status in juvenile appeals; asking that its name be removed from the style of pleadings, and that it be relieved of briefing. It claimed that in such cases it was not a party and had no standing because it was merely the court named custodian of children, and the respective district attorneys were the only proper parties.

I assume from this case then, that the Department's claim of standing which was sustained by the majority, will be DHS's consistent position in every case where it is the custodian.

I do not agree that the trial judge lacked the "power and authority" to order these children removed from their DHS placement. In fact, I do not even agree that the power and authority of the trial judge is a question properly presented in this action. The only question here is whether, in exercising the power and authority he clearly had, the trial judge abused his discretion. It is my opinion that he did not.

Prior to this opinion there was no question raised about the power of the trial court to enter the orders it did. DHS, now the declared appellant, has explicitly conceded at every step of the way in this litigation that the trial court had the power and authority to do what it did. DHS challenged only the court's exercise of discretion in using that power.

It is not surprising that DHS conceded the court's power to make the orders it did, for the Department had lost that battle in at least two recent opinions of this court. Unlike the Department, the majority of this court seems to have forgotten *State ex rel Dept. of Inst., Soc & R. Serv. v. Griffis,* 545 P.2d 763 (Okla.1976), 83 ALR 3d 363, and *Carder v. Court of Criminal Appeals,* 595 P.2d 416 (Okla.1979).

Both these decisions involved the issue of whether the trial court or DHS has the ultimate power over children who are wards of the court placed in the custody of DHS. In each case this court held that the constitution, statutes and good sense required finding that the trial court has the jurisdiction and power over its children although they may be in the custody of DHS. Now the court holds to the opposite result.

In *Griffis,* the Department claimed that its refusal to consent to an adoption (where it had been imbued with the power to consent), deprived the trial court of jurisdiction over the adoption matter.

The following from *Griffis* applies with equal force here:

"Respondent submits that adoption is a function which requires the exercise of the judicial power, which by the Oklahoma Constitution, Article VII, Sections 1, 5, and 7, is vested in the Courts, and further, that Title 10, O.S.1971, § 60.04 places original and exclusive jurisdiction over adoption proceedings in our district courts. Respondent contends that if the Department's position is upheld the Department, not the court, would become the final arbiter in an adoption proceeding. Respondent further argues that guarantees of due process of law are violated if the Department may prevent an adoption by simply refusing to consent to it where the reasonableness of that refusal is not subject to judicial review.

The primary issue in an adoption proceeding is whether the adoption will promote the best interests of the child. See, generally, *In Re: Adoption of Greer,* Okl., 463 P.2d 677 (1969). As Respondent correctly urges, the trial judge must make that determination. The adoption statutes clearly do not permit any interpretation which would derogate the constitutionally vested jurisdiction of the trial judge and allow a delegation of this

decision making power to the Department or to any other third party. . . .

While we are not concerned here with the question of parental consent, we cannot help but observe that the legislature has provided that in certain compelling situations a child may be adopted without the consent of his natural parents. 10 O.S.Supp. 1974, § 60.06. If the Department's position were upheld, it would lead to the ultimate conclusion that the Department can always deprive a court of jurisdiction in an adoption proceeding involving a child judicially placed in the Department's custody while the natural parent cannot. We do not believe that the legislature intended to place the relationship of the Department and children entrusted to its custody on a higher plane than the law accords the relationship existing between natural parents and their children.

The Department may not operate beyond the scrutiny of judicial review." *Id.* at 766–768.

In *Carder,* while the child in question had been adjudicated delinquent rather than deprived, the underlying question of power was the same. There we stated:

"Simply put, the Department's contention is that delinquent children, such as Howard Carder, Jr., upon commitment to its custody, are *its* children, not the court's; and are thereafter beyond the reach of the court.

This is not the intention of the statutes. If it were, we would have no alternative but to strike them down as unconstitutional.

We decline the obvious temptation to engage in a lengthy and well documented legal discussion of the doctrine of separation of powers and the requirements of due process of law. It should, we believe, be sufficient to remember that the power to disrupt a family relationship and interfere with a child's personal liberty is placed with the courts. The assumption and exercise of that power are limited by

law. Persons subject to it receive substantive and procedural protections from arbitrary and capricious action; they must be proceeded against in the manner prescribed by law and given fair treatment. A judgment against them is subject to review by higher courts.

Placement of Howard's custody with the Department was but one of many options available to the court after adjudicating Howard a delinquent child and ordering him a ward of the court (§ 1116). There is no basis for the Department's argument that Judge Maley "lost" jurisdiction over Howard by reason of the custody order. That order did not impair or in any way affect the court's *jurisdiction* over Howard. Howard remained a ward of the court placed only in the *custody* of the Department by court order and the court retained its jurisdiction over his person and J–77–14.

Once a child has been made a ward of the court, even the natural parent's consent to the child's adoption by third parties and the filing of adoption petition will not terminate the court's jurisdiction over the child. *West v. State, Dept. of Public Welfare,* Okl., 536 P.2d 901 (1973)." *Id.* at 421–422.

Now, however, this court is willing to gratuitously declare that the Department, not the judiciary, has the ultimate power over these children who are wards of the court. The holding that the court had no power or authority to order its wards removed from the DHS "placement" or modify its previous custody order by placing the children with others, must result from one of two things. Either the majority views a DHS placement as something of greater sanctity and validity than a trial court's continuing jurisdiction over its wards, or the majority perceives DHS as more trustworthy and benevolent than the judiciary.

In either case, by its deferential attitude toward this DHS arrangement, the majority has created an upside down situation. Everyone involved with this placement has

the power to terminate it—except the trial judge whose wards are involved.

Surely no one imagines that the Department would have felt compelled to seek this majority imposed "prior judicial determination" if it had decided that Kenneth and Debra weren't working out. So too, Kenneth and Debra could unilaterally end this placement.

The contract creating the arrangement stipulates that the placement "may be terminated by either party at any time."

Additionally, I must dissent to the majority's decision, also gratuitous, to "strongly urge" the entire District Court Bench of Oklahoma County to disqualify itself because of the employment relationship between judges and public defenders. There has not been a demand for the disqualification of one judge in this matter, let alone the entire bench and there is no showing that the disqualification is warranted. I do agree with the majority's statement that the issue is not before us.

It should be observed that we are only creating problems for the future. If this employment "relationship" disqualifies every judge in this case then every judge should be likewise disqualified whenever one with whom this relationship exists. In addition to public defenders, this would include among others, court reporters, bailiffs, etc.

Finally, I disagree with the court's refusal to address the related "challenge" to Eugenia as a person eligible to petition for adoption because of her previous representation by court appointment at the termination hearing.

It seems clear to me that failing to answer this constant refrain of Intervenors substantially increases the chance of prolonging the litigation by future appeals. This was the evil sought to be avoided by the majority in disqualifying every judge in Oklahoma County on its own initiative. Having taken that drastic step it would seem a small thing to state that Intervenors' position is not persuasive and we reject it.

Under the particular facts of this case, Eugenia's representation of these children at the non-adversarial termination proceeding and her subsequent decision to seek their adoption did not present even a suggestion of a conflict of interest.

I believe the court's opinion goes further than necessary. I am certain this opinion will spawn many other appeals.

I am authorized to state that Justice DOOLIN joins with the views expressed herein.