2002 OK CIV APP 22

In the Matter of the ADOPTION OF I.D.G., a minor.

Benjamin K.T. and Jaclyn E.T., Petitioners/Appellants,

v.

Oklahoma Department of Human Services, Respondent/Appellee.

No. 96,311.

Court of Civil Appeals of Oklahoma, Division No. 2.

Jan. 15, 2002.

John M. O'Connor, Newton, O'Connor, Turner & Auer, P.C. Tulsa, OK, for Appellants.

M. Ellen Feaver, Assistant General Counsel Oklahoma Department of Human Services, Oklahoma City, OK, for Appellee.

JOHN F. REIF, Vice Chief Judge:

· ¶1 Petitioners, Benjamin and Jaclyn T., appeal the district court's order dismissing their petition to adopt I.D.G., a minor child placed in their care as foster parents by the Department of Human Services (DHS). The issue on appeal is whether the district court erred in determining as a matter of law that Petitioners could prove no set of facts in support of their claim. Upon review of the record and applicable law, we conclude that the district court did not err and affirm its order.

¶2 I.D.G. was born on October 28, 1999, approximately two weeks after his two older siblings were removed from the home and placed in DHS custody. I.D.G. was removed from the home on February 8, 2000. DHS placed I.D.G. in foster care with Petitioners because the foster home where his siblings were already living was full. The biological parents' rights were terminated as to all three children on April 6, 2000, and that termination is now final.[1]

---

1. I.D.G.'s biological father unsuccessfully appealed the order terminating his parental rights. *In re T.E.M.,* Appeal No. 94,817 (Okla.Civ.App.

¶3 I.D.G. remained with Petitioners for ten months. Petitioners assert they told DHS repeatedly that they wanted to adopt I.D.G., but do not assert that DHS ever indicated that it considered them potential adoptive parents for the child. I.D.G. was removed from Petitioners' home on December 15, 2000, for reasons unrelated to their care of him.[2]

¶4 On January 5, 2001, Petitioners filed a petition to adopt I.D.G., acknowledging that he was in DHS custody and was the subject of an ongoing deprived proceeding. They stated that they would "apply to the Court for a determination that the child is eligible for adoption without the consent of his biological parents." Petitioners also acknowledged that DHS was authorized to consent to any adoption of I.D.G. and stated that no one other than DHS claimed to have custody or visitation rights with I.D.G.

¶5 Petitioners also filed applications to have the court appoint counsel for I.D.G. and for a temporary restraining order to prevent DHS from placing him with any other prospective adoptive family. They filed these applications because of DHS's plan to place I.D.G. in an adoptive home with his siblings. The court granted both applications on January 5, 2001.

¶6 On January 23, 2001, DHS filed its objection to Petitioners' petition to adopt in conjunction with a motion to consolidate the petition with the ongoing deprived proceeding. DHS stated that its recommendation was that I.D.G. be placed in an adoptive home with his siblings and relied on statutes and administrative code provisions mandating that preference. DHS also stated that Petitioners had "failed to avail themselves of the statutory procedure available to them as foster parents to object to [the] removal [of I.D.G. from their home]," and had not attempted to intervene in the deprived proceeding even though "that proceeding [has]

extensive history regarding the best interest of not only [I.D.G.], but also his siblings." Petitioners objected to both motions.

¶7 At no time did Petitioners intervene in the deprived proceeding—although they had the right to do so—to press their rights as foster parents or request that the trial court consider them as adoptive parents.

¶8 Following a hearing, the district court granted DHS's motion to dismiss on April 25, 2001, stating:

[W]e cannot ignore the existence of JFJ–99–403 [the termination case]. There is a decree in that case, based upon a jury's verdict. It is a final judgment. It sets for all time, subject to the actions of the appellate courts, the rights and relationships of the parties to that action.

Pursuant to 7003–5.5 I.3, the Court, in its discretion, did order that the Department of Human Services have authority to consent to the adoption of the child in question-or the children in question in that case. The legislature, as all of us who deal with this know, in 1997 took about three pages of statutory law and turned it into forty or fifty with the new Adoption Code. I believe that the detail and the specificity that is now found in the Code changes somewhat any strict reliance on prior case law to delineate the rights and obligations of the parties here.

I believe that this boils down to one pretty simple essential element, and that is the consent issue. [Title *10 O.S. Supp. 2000 § 7503–2.1* (D)(1)] provides that when the consent for adoption is necessary for minors in the custody of the Department of Human Services, the director may authorize employees to appear and give consent to adoption by a family whose application for adoption has been approved by the Department.

March 9, 2001) (*cert.denied*). The termination is now final as to both of the biological parents.

2. Petitioners explain I.D.G.'s removal in their petition as, "Recently the Department of Human Services temporarily removed the child from Petitioners['] custody while false allegations regarding another foster [child] in their care were in-

vestigated. No charges have been filed." DHS stated in its appellate brief, "I.D.G. had been removed from [Petitioners'] home due to the confirmed finding of child abuse." In later filings, Petitioners acknowledged that DHS ultimately considered the allegations of abuse confirmed.

We know the consent is necessary. That statute, I believe, creates one circumstance on how consent is to be given. [Title *10 O.S. Supp.2000 § 7505–4.2*] gives us the exceptions to the requirements of consent. I believe that notwithstanding the ultimate directive to the Court to consider the child's best interest, that this Court cannot create a new class of children eligible for adoption, other than those that are set forth by the statutes.

The petitioners in this case, simply as a matter of law, cannot allege a legal status of this child to be eligible for adoption. The Department has been given the authority to consent, and they choose not to. [Title *10 O.S. Supp 2000 § 7503–2.2*] tells us when that consent may be given. I just don't believe that the adoption case may proceed, because the child is not one who is eligible to adopt under these circumstances.

Petitioners appeal.

### STANDARD OF REVIEW

■■■ ¶ 9 Because it presents a question of law, we review a district court's order to dismiss a case de novo. *Miller v. Miller*, 1998 OK 24, ¶ *15*, 956 P.2d 887, 894. "A motion to dismiss for failure to state a claim upon which relief can be granted will not be sustained unless it should appear without doubt that the plaintiff can prove no set of facts in support of the claim for relief." *Id.* (footnote omitted); *see also 12 O.S. Supp. 2000 § 2012* (B)(6). Further, "[a] petition can generally be dismissed only for lack of any cognizable legal theory or for insufficient facts under a cognizable legal theory." *Miller*, 1998 OK 24, ¶ 15, 956 P.2d at 894 (footnote omitted).

### DISCUSSION

■■■ ¶ 10 "The duty of the trial court in adoption matters is to determine whether (1) the petitioners are eligible to adopt the child, (2) the child is eligible for adoption, and (3) the adoption would be in the child's best interest." *In re Adoption of G.D.L.*, 1987 OK 115, ¶ *17*, 747 P.2d 282, 285 (citation omitted). Adoption statutes are strictly construed, because "matters relating to adoption are wholly within the control of the legislature." *Id.* at ¶ 13, 747 P.2d at 285 (citation omitted). Upon reviewing Petitioners' allegations and the applicable law, we conclude that, not only can Petitioners not establish any cognizable legal theory to support this petition to adopt, they lack standing to pursue the adoption.

### A. PETITIONERS LACKED STANDING.

■■■ ¶ 11 The parties have not addressed the question of Petitioners' standing. Nevertheless, because of the importance of the issues concerned here, we feel compelled to address it and may do so *sua sponte. Hendrick v. Walters*, 1993 OK 162, ¶ *4*, 865 P.2d 1232, 1236. "Standing refers to a person's legal right to seek relief in a judicial forum." *Id.* (footnote omitted). It questions whether a litigant has "suffered injury to a legally protected interest as contemplated by statutory or constitutional provisions." *In re Adoption of Baby Boy D*, 1985 OK 93, ¶ 16, 742 P.2d 1059, 1062 (footnote omitted). "[T]he focus is on the *party* seeking to get his complaint before the court and not on the issues he wishes to have adjudicated." *Id.*

■■■ ¶ 12 Standing is composed of three elements:

(1) a legally protected interest which must have been injured in fact—*i.e.*, an injury which is actual, concrete and not *conjectural* in nature, (2) a *causal* nexus between the injury and the complained of conduct, and (3) a *likelihood, as opposed to mere speculation, that the injury will be redressed by a favorable decision.*

*Cities Serv. Co. v. Gulf Oil Corp.*, 1999 OK 16, ¶ 3, 976 P.2d 545, 547 (footnote omitted). An initial inquiry into standing must reveal, among other things, that "the interest to be guarded is within a statutorily or constitutionally protected zone." *Hendrick*, 1993 OK 162, ¶ 5, 865 P.2d at 1236–37 (footnote omitted). Generally, a plaintiff can assert only his own interests, not those of a third party. *Hendrick*, 1993 OK 162 n. 14, 865 P.2d at 1236.

¶ 13 Petitioners' rights in this matter, to the degree they exist, arise out of Petition-

ers' contractual relationship with DHS. Generally, those rights have been cast in terms of continuing a long-term foster arrangement. The United States Supreme Court has recognized that foster parents have a *limited* constitutional liberty interest in the *foster family relationship*. *Smith v. Org. of Foster Families*, 431 U.S. 816, 845–46, 97 S.Ct. 2094, 2110, 53 L.Ed.2d 14 (1977). The Tenth Circuit Court of Appeals relied on *Smith* in observing that:

> Although emotional ties between children and unrelated adults may give rise to a constitutionally protected liberty interest, such an interest is *limited by state law* when the requisite emotional ties "have their origins in an arrangement in which the State has been a partner from the outset."

*Spielman v. Hildebrand*, 873 F.2d 1377, 1384 (10th Cir.1989) (emphasis added) (quoting *Smith*, 431 U.S. at 845, 97 S.Ct. at 2110).

¶ 14 The Oklahoma Court of Civil Appeals also relied on *Smith* when it held that a grandmother had standing as *in loco parentis* in a juvenile proceeding because she had physical custody of the children for over three years. *In re P.C.*, 1992 OK CIV APP 134, ¶ 7, 842 P.2d 364, 366–67 (citing *Smith*, 431 U.S. 816, 97 S.Ct. 2094 (1977)). Further, in *In re B.C.*, 1988 OK 4, ¶ 20, 749 P.2d 542, 545, the Oklahoma Supreme Court found foster parents had standing to *intervene* in—not initiate—an adoption proceeding as *in loco parentis*, where they had been foster parents for seven years and had received repeated assurances from DHS that they would be able to adopt the child. In the permanency hearings in a deprived proceeding under the current statutory scheme, foster parents have the statutory right to be considered as potential adoptive parents and, if the child has lived with them for twelve months or more, "great weight" should be given to their

desire to adopt. *10 O.S. Supp.2000 § 7003–5.6h.*

■ ¶ 15 I.D.G. lived with Petitioners for ten months. While this is not an insignificant period of time, particularly in the course of a very young life, it does not convey upon Petitioners the right, independent of their contractual right as foster parents, to control the ultimate placement of I.D.G. Petitioners' rights as foster parents are set out in contract and statutes. Petitioners undoubtedly had standing to contest DHS's decision to remove I.D.G. from their home, but they do not have standing to pursue his adoption in a separate proceeding initiated outside of the deprived proceeding and after I.D.G. was removed from their home.

**B. PETITIONERS FAILED TO STATE A CLAIM.**

¶ 16 In part because Petitioners lack standing, they could not make the allegations necessary to support this petition to adopt I.D.G. A petition to adopt must contain, among other things:

> The name or relationship of the minor to any individual who has executed a consent, extrajudicial consent for adoption or a permanent relinquishment to the adoption, and the name or relationship to the minor of any individual whose consent, extrajudicial consent for adoption or permanent relinquishment may be required, and *any fact or circumstance that may excuse the lack of consent.*

*10 O.S. Supp.2000 § 7505–3.1* (A)(7) (emphasis added).[3] Petitioners acknowledged in their petition the existence of the deprived proceeding and stated they would file certified copies of the order or orders "authorizing DHS to consent to the adoption of the child," but alleged only that they would "apply to the Court for a determination that the child is eligible for adoption without the consent of his *biological parents.*"[4] (Emphasis

---

3. In making this argument, Petitioners mistakenly cite to *10 O.S. Supp.2000 § 7503–3.1,* which applies to minor children born out of wedlock and provides for the notification of the putative father when the mother is considering adoption. Petitioners' petition did follow *10 O.S. Supp.2000 § 7505–3.1,* which sets forth the general requirements for a petition for adoption.

4. Petitioners cited to *10 O.S. Supp.2000 § 7505–4.2* (N)(2), which provides that "[c]onsent to adoption is not required from … [a]n individual whose parental relationship to a minor has been legally terminated or legally determined not to exist."

added.) They contend on appeal that these allegations were sufficient to entitle them to an evidentiary hearing.

¶ 17 Petitioners do not and never have argued that DHS will consent to their adoption of I.D.G. and Petitioners did not allege in their petition "any fact or circumstance" to excuse consent by DHS.[5] Petitioners' arguments to excuse consent at the trial court and here are not based upon fact, but upon their analysis of the legal framework surrounding adoptions. No evidence was relevant unless the trial court determined that consent by DHS was not necessary by law. Therefore, the trial court did not err in treating this as a question of whether the case should be dismissed without an evidentiary hearing or determination.

¶ 18 DHS's authority to consent to I.D.G.'s adoption is based upon statute and was granted by the trial court in the now-final deprivation proceeding. *See 10 O.S. Supp. 2000 §§ 7003–5.5* (I)(3) and 7503–2.1(D)(1). DHS must now "determine the appropriate placement of the child." *10 O.S. Supp.2000 § 7003–7.1* (C)(1). The Oklahoma Supreme Court has held that DHS has the duty to place a child in the first instance, at least in terms of foster home placement, after which time the district court can approve or disapprove of DHS's decision, "according to the best interests of the child standard." *State, ex rel. Dep't of Human Servs. v. Colclazier,* 1997 OK 134, ¶ 12, 950 P.2d 824, 829. DHS, in expressing its preference to place I.D.G. in an adoptive home with his siblings, is following a statutory mandate. *10 O.S. Supp.2000 § 7202* (12).

¶ 19 Petitioners argue that the trial court can and should exercise control over DHS's refusal to consent to their adoption, citing to *State ex rel. Department of Institutions, Social & Rehabilitative Services v. Griffis,* 1975 OK 164, 545 P.2d 763. *Griffis* is a case with facts remarkably similar to those in this case, except that, in *Griffis,* the foster parents had raised the child for several years. DHS's predecessor argued that the trial court lacked jurisdiction to consider the foster par-

ents' petition to adopt unless the Department consented to the adoption. The Supreme Court cited to then-existing adoption statutes and observed:

> If the Department's position were upheld, it would lead to the ultimate conclusion that the Department can always deprive a court of jurisdiction in an adoption proceeding involving a child judicially placed in the Department's custody while the natural parent cannot. We do not believe that the legislature intended to place the relationship of the Department and children entrusted to its custody on a higher plane than the law accords the relationship existing between natural parents and their children.

*Id.* at ¶ 22, 545 P.2d at 767. The Court held that the department's refusal to consent did not deprive the trial court of jurisdiction to hear the foster parent's petition to adopt. *Id.* at ¶ 24, 545 P.2d at 768.

¶ 20 DHS argues that the rule in *Griffis* has been modified by the new adoption code. Specifically, DHS points to statutory language mandating that DHS "shall determine the appropriate placement of the child." *10 O.S. Supp.2000 § 7003–7.1* (C)(1). As DHS observes, the only statutory limitation on that statutory duty is that it "may [not] return a child to a parent that contributed to the child being deprived due to abuse or neglect, without prior approval of the court." *Id.* As observed above, the Supreme Court has held, under this statute, that DHS has the duty to place a child in the first instance, after which the district court can approve or disapprove of its decision, "according to the best interests of the child standard." *Colclazier,* 1997 OK 134, ¶ 12, 950 P.2d at 829.

¶ 21 Moreover, even in *Griffis,* the Supreme Court outlined a procedure that, we conclude, would exclude Petitioners' petition. The court stated:

> [The trial judge] has the power and the duty ... to determine whether the evidence supports the allegations of the petition. Specifically, whether under the laws

---

5. Petitioners assert on appeal that they did make such an allegation in their subsequent application to adopt the child without consent, but their application merely acknowledges that DHS will not consent and sets forth the same kind of legal arguments Petitioners assert here.

of Oklahoma the [petitioners] are indeed persons who are eligible to adopt a child and whether this child is indeed one who is eligible to be adopted. If these allegations are borne out by the evidence, [the trial judge] must then determine whether the proposed adoption would promote [the child's] best interests.

*Griffis,* 1975 OK 164, ¶ 26, 545 P.2d at 768. In other words, Petitioners must first establish a right to adopt the child, before evidence regarding his best interests becomes relevant *to this proceeding.*

¶ 22 We agree that DHS "may not operate beyond the scrutiny of judicial review." *Id.* at ¶ 23, 545 P.2d at 768. That is not to say, however, the Petitioners can dictate the setting in which DHS's decisions are reviewed by the trial court. Petitioners could have intervened in the deprived child proceeding to assert their rights as foster parents and press their desire to be adoptive parents. *See 10 O.S. Supp.2000 § 7003–5.6* (D). They chose not to do so.

¶ 23 Petitioners point to language in section 7003–5.6(D) that provides "[s]uch notice and opportunity to be heard [in the deprived proceeding] shall not be construed as requiring any foster parent, pre-adoptive parent or relative to be made a party to such deprived proceedings." They argue that, if the deprived proceeding was the only proceeding in which they could assert their intent to adopt I.D.G., they are, in essence, being forced to join the deprived proceeding. We disagree. Requiring Petitioners to take advantage of the review opportunities afforded them is not the same as forcing them to be a part of proceedings they have no interest in. If Petitioners had no interest in adopting I.D.G., they would not need to be a party to the deprived proceedings. However, since they did have such an interest, they should have joined the proper proceedings, rather than attempting to create a new one.[6]

The decisions we have made here are not altered by the fact that the trial judge, in

the placement of the children with DHS for adoption, reserved the right to consent to an adoption as authorized by § 1133. *The authority to consent or to withhold consent to an adoption in the exercise of sound judicial discretion may be exercised by the district court when and if that issue is ripe for determination.*

*In re Jeffrey S.,* 1983 OK 49, ¶ 41, 663 P.2d 1211, 1217 (emphasis added). The issue is not ripe here because Petitioners have pursued the wrong process.

■ ¶ 24 Finally, Petitioners argue that the trial court erred because it did not reach the question of I.D.G.'s best interests. Certainly, "[t]he primary issue in an adoption proceeding is whether the adoption will promote the best interests of the child." *Griffis,* 1975 OK 164, ¶ 20, 545 P.2d at 766; *see also Jeffrey S.,* 1983 OK 49, ¶ 11, 663 P.2d at 1216, and *Colclazier,* 1997 OK 134, ¶ 10, 950 P.2d at 828. Indeed, even when DHS follows its statutory mandate to place siblings together, the best interests of each child ultimately control that decision. *10 O.S. Supp.2000 § 7202* (12).

¶ 25 The first consideration, however, is whether this was a proper adoption case to begin with. Only then could the trial court justify an inquiry into the child's best interests. Petitioners have repeatedly argued that, in dismissing their petition, the trial court accorded DHS greater rights than natural parents have. This argument is simply flawed. Even well-intentioned persons cannot haul biological parents into court and force them to justify their refusal to consent to the adoption of their child without following statutory procedures created to preserve the best interests of all children. This is true even if those desiring the adoption would unquestionably be better parents to the child than the biological parents. Yet that is, essentially, what Petitioners have tried to do here.

---

6. Petitioners also say, on appeal, that they were not given proper notice of the review hearings, but they were obviously aware of the status of the deprived proceeding from the outset. If Petitioners were truly denied notice of review hearings, they should have appeared in the appropriate case and made their complaint there. Moreover, there is no indication that they ever informed the trial court in this proceeding that they were not given proper notice of the review hearings in the termination proceeding.

¶ 26 All that the trial court said in dismissing this case, and all that we are saying here, is that Petitioners had a proper forum in which to raise their concerns and failed to avail themselves of that forum. Having failed, they cannot bend a procedure to suit their wishes under the assumption that no one else can or will adequately protect I.D.G.'s interests.

"An adoption procedure, while guided by a consideration of the best interests of the child, was not intended, nor statutorily required, to weigh every competing interest among various families. To do so would create conflicts which would frustrate the purpose of adoption in the first place."

*Jeffrey S.*, 1983 OK 49, ¶ 39, 663 P.2d at 1217 (quoting *Barriner v. Stedman*, 1978 OK 82, ¶ 21, 580 P.2d 514, 518). Petitioners have, therefore, failed to state a claim upon which relief can be granted. *Miller v. Miller*, 1998 OK 24, ¶ 15, 956 P.2d 887, 894.

C. THE TRIAL COURT WAS NOT REQUIRED TO APPOINT A GUARDIAN AD LITEM.

[16] ¶ 27 Finally, Petitioners assert that, once they requested a guardian ad litem, the court had a mandatory duty to appoint one.

The court may appoint a separate guardian ad litem for the minor in a contested proceeding and *shall appoint* a separate guardian ad litem *upon the request of a* party, the minor, the attorney of the minor, *prospective adoptive parent,* or a person or agency having physical or legal custody of the child.

*10 O.S. Supp.2000 § 7505–1.2* (B)(1) (emphasis added). Petitioners' argument, however, assumes that they were validly "prospective adoptive parent[s]." Because they were not, the trial court was not required to appoint a guardian ad litem.

## CONCLUSION

[17] ¶ 28 Petitioners, former foster parents of I.D.G., sought to force an adoption of him without the consent of DHS, after the parental rights of his biological parents were terminated. Petitioners did not pursue adoption in the deprived proceeding, although they knew it was ongoing. Having failed to do so, they lacked standing to pursue adoption in a separate proceeding and could not make the necessary assertions to support their petition to adopt. Therefore, the trial court's grant of DHS's motion to dismiss was proper and is affirmed.

¶ 29 AFFIRMED.

¶ 30 GOODMAN, P.J., and TAYLOR, J. (sitting by designation), concur.