545 P.2d 763 (1975)
STATE of Oklahoma ex rel. DEPARTMENT OF INSTITUTIONS, SOCIAL AND REHABILITATIVE SERVICES, Petitioner,
v.
Lyle R. GRIFFIS, Associate District Judge, Caddo County, State of Oklahoma, Respondent.
No. 47769.
Supreme Court of Oklahoma.
December 9, 1975.
Rehearing Denied February 10, 1976.
J. Harry Johnson, Donald L. Ritter, Oklahoma City, for petitioner.
Jim Mertz, Oklahoma City, for respondent.
*764 SIMMS, Justice:
Petitioner, Department of Institutions, Social and Rehabilitative Services, (Department) requests this Court to assume original jurisdiction and issue a writ of prohibition against Respondent Trial Judge to prohibit him from proceeding further in Caddo County District Court Case No. A-74-13, an adoption action.
The subject of the adoption is a minor female whom we shall refer to as "Debbie" for the purpose of this opinion. Debbie was six years of age when Wade and Mildred Johnson (Johnsons) filed a petition for her adoption in the District Court, Caddo County, on the 6th day of June, 1974.
The record reveals that Debbie was born on the 26th day of March, 1968, and that on February 12, 1969, her natural mother appeared before the Juvenile Court of Caddo County (Case No. JFJ-69-5) and voluntarily surrendered Debbie's temporary custody to the Department pursuant to 10 O.S. 1971 §§ 25-37. The order of the Juvenile Court issued that day reflects that Debbie was adjudicated a dependent and neglected child within the purview of the Juvenile Code, and that the Court placed her temporary custody with the Department until further order of the Court with authority for them to place her in a foster home.
On February 17, 1969, the Department placed Debbie with the Johnsons on a foster home contractual basis and she remained in their home until April of 1974. In October, 1971, the natural mother and father appeared before the Juvenile Court and executed voluntary relinquishments to all their rights to Debbie.
On December 5, 1973, the Juvenile Court issued an order and decree terminating the parental rights of both parents based upon the voluntary relinquishments referred to above, and upon finding that the best interests of Debbie would be served. This order placed Debbie's care and custody with the Department for the purpose of finding a suitable home for her adoption and giving the Department authority to consent to her adoption.
The briefs filed in this Court reflect that the Johnsons notified the Department that they wished to adopt Debbie. The Department conducted a pre-adoptive investigation and on the basis of that report, the Department would not consent to their adoption of Debbie. The Johnsons allege in their brief that they were rejected as suitable adoptive parents for three reasons: (1) Their economic station in life; (2) Their respective ages (53 and 48); (3) The fact that Mrs. Johnson has hypertension. Apparently tensions then developed between the Department and the Johnsons, and in April of 1974, the Department removed Debbie from the Johnson home.
On June 6th, 1974, the Johnsons filed their petition to adopt Debbie in the District Court of Caddo County and that action is the basis of the instant matter.
Subsequent to the filing of the Johnson's Petition, Respondent Judge issued an ex parte order at the Johnson's request, which, in substance, directed the Department to return Debbie to the Johnsons or to appear before the Court and show why compliance with the order should not be required.
According to the briefs the Department appeared at this hearing on July 1, 1974, and objected to the Court's jurisdiction over the adoption action. It was the Department's position that the Court lacked jurisdiction to hear the matter on its merits because the Department would not consent to Debbie's adoption. The trial court overruled Department's objections, received evidence and allowed the Johnsons to *765 amend paragraph 7 of their petition to read that "the Department arbitrarily and without just cause withheld its consent to adopt." The Court took the matter under advisement and directed the Department not to take any action regarding the adoption of Debbie until the matter of the Johnson's petition was determined.
On August 19, the District Court issued the following order:
"The Court finds that the said Department has the sole and exclusive right to consent to the adoption of the child in question and, therefore, the Petition to Adopt is hereby dismissed.
"The Court further finds that the said Department abused its discretion in removing the said child from the foster home of the adoptive applicants and it is the Order of this Court that said child be returned to the Johnson foster home in Caddo County."
"Said Department is to have a reasonable time to comply with this order."
No appeal was taken from this order. According to the Department's Brief, the Department then consented to the adoption of Debbie by a family other than the Johnsons. Allegedly this adoption has been finally completed according to law.
On August 27, 1974, the Department notified Respondent that Debbie had been adopted. On August 28, 1974, a motion for new trial was filed by the Johnsons alleging, inter alia, that the trial court erred in its determination that notwithstanding the particular facts of the case and the "special relationship" between the Johnsons and the child, the Court could not grant a Decree of Adoption in spite of the Department's refusal to consent to same.
Respondent set hearing for this motion on the 5th day of September, 1974, whereupon the Department filed an Application for Writ of Prohibition with this Court to restrain Respondent from further proceeding in the matter.
The District Court, nonetheless, heard the arguments of counsel on September 5, 1974, and entered an order as follows:
"1. That the order of August 19, 1974, is hereby vacated, set aside, and to be held for naught;
"2. That the motion for new trial is hereby granted;
"3. That the Order in Case No. JFJ-69-5, styled In the Matter of * * *, children under 18 years of age, issued on December 5, 1973, is hereby vacated and set aside and custody of the said child is hereby restored to the court.
"4. Further, that either counsel or some employee of the said Department is hereby ordered to deliver physical custody of the said child to Judge Lyle R. Griffis, in the offices of his Court by 9:00 A.M. on Monday, the 9th day of September, 1974;
"5. That failure of the Department to abide by the orders of this Court without following legal process will lead to the Court seeking a citation of contempt to be levied against Mr. L.E. Rader, Director, Department of Institutions, Social and Rehabilitative Services of Oklahoma."
Through agreement of the parties with this Court, execution of this Order was stayed pending the determination of the Department's application.
Title 10, O.S. 1971, § 60.12, provides:
"(1) A petition for adoption shall be filed in duplicate, verified by the petitioners, and shall specify:
(a) The full names, ages and places of residence of the petitioners and, if married, the place and date of the marriage.
(b) When the petitioners acquired or intend to acquire custody of the child and from what person or agency.
(c) The date and place of birth of the child and sex and race.

*766 (d) The name used for the child in the proceeding and, if a change in name is desired, the new name.
(e) That it is the desire of the petitioners that the relationship of parent and child be established between them and the child.
(f) A full description and statement of value of all property owned or possessed by the child, if any.
(g) Facts, if any, which excuse consent on the part of the parents, or either of them, to the adoption.
(2) Any written consent required by this Act may be attached to the petition, or may be filed, after the filing of the petition, with the consent of the court."
The pertinent portions of Title 10, O.S. Supp. 1974, § 60.05 upon which the Department relies, provide that:
"An adoption of a child may be decreed when there has been filed written consent to adoption executed by:
* * * * * *
(4) The executive head of an agency if both parents are dead, or if the child has been relinquished for adoption to such agency, or if the rights of the parents have been judicially terminated and custody of the child has been legally vested in such agency with authority to consent to adoption of the child;
* * * * * *
The consent required * * * shall be acknowledged before a judge * * * Provided, * * * that when such consent for adoption is necessary for children in custody of the Department of Public Welfare, the Director of Public Welfare may designate, authorize, and direct in writing an employee of the Department to appear in the court of the county in which said adoption proceedings are to be completed and to give written consent for the adoption of such child by the family whose application for adoption has been approved by the Department of Public Welfare."
The Department contends that its consent is a mandatory prerequisite in this adoption action and that since it has refused to give such consent, Respondent Judge is deprived of jurisdiction over the matter. The Department argues that as Respondent has no jurisdiction in Case No. A-74-13, this Court should issue a Writ of Prohibition to restrain him from any further actions involving the Johnsons and their intended adoption of Debbie.
Respondent submits that adoption is a function which requires the exercise of the judicial power, which by the Oklahoma Constitution, Article VII, Sections 1, 5, and 7, is vested in the Courts, and further, that Title 10, O.S. 1971, § 60.04 places original and exclusive jurisdiction over adoption proceedings in our district courts. Respondent contends that if the Department's position is upheld the Department, not the court, would become the final arbiter in an adoption proceeding. Respondent further argues that guarantees of due process of law are violated if the Department may prevent an adoption by simply refusing to consent to it where the reasonableness of that refusal is not subject to judicial review.
The primary issue in an adoption proceeding is whether the adoption will promote the best interests of the child. See, generally, In Re: Adoption of Greer, Okl., 463 P.2d 677 (1969). As Respondent correctly urges, the trial judge must make that determination. The adoption statutes clearly do not permit any interpretation which would derogate the constitutionally vested jurisdiction of the trial judge and allow a delegation of this decision making power to the Department or to any other third party.
10 O.S. 1971, § 60.13 provides that:
"(1) Upon the filing of a petition for adoption, the court shall order an investigation to be made (a) by the agency having custody or legal guardianship of the child, or (b) in other cases, by the State Department of Public Welfare, or *767 (c) by a person qualified by training or experience, designated by the court, and shall further order that a report of such investigation shall be filed with the court by the designated investigator within the time fixed by the court and in no event more than sixty (60) days from the issuance of the order for investigation, unless time therefor is extended by the court. Such investigation shall include the conditions and antecedents of the child for the purpose of determining whether he is a proper subject for adoption; appropriate inquiry to determine whether the proposed home is a suitable one for the child; and any other circumstances and conditions which may have a bearing on the adoption and of which the court should have knowledge; and, in this entire matter of investigation, the court is specifically authorized to exercise judicial knowledge.
"(2) The court may order agencies named in subsection (1) of this section located in one or more counties to make separate investigations on separate parts of the inquiry, as may be appropriate.
"(3) The report of such investigation shall become a part of the files in the case and shall contain a definite recommendation for or against the proposed adoption and state reasons therefor."
Title 10, O.S. 1971, § 60.14, provides:
"If the child is related by blood to one of the petitioners, or is a stepchild of the petitioner, or the court finds that the best interests of the child will be furthered thereby, the court, after examination of the report required in Section 13, in its discretion, may waive the entry of an interlocutory decree and the waiting period of six (6) months provided in Section 15 and grant a final decree of adoption, if satisfied that the adoption is for the best interests of the child."
Title 10, O.S. 1971, § 60.15, provides that:
"Upon examination of the report required in Section 13, and after hearing, the court may issue an interlocutory decree giving the care and custody of the child to the petitioners, pending the further order of the court. Thereafter the investigator shall observe the child in his proposed adoptive home and report in writing to the court on any circumstances or conditions which may have a bearing on the granting of a final adoption decree. After six (6) months from the date of the interlocutory decree the petitioners may apply to the court for a final decree of adoption. The court shall thereupon set a time and place for final hearing. Notice of the time and date of the hearing shall be served on the State Department of Public Welfare, in those cases where said Department has original custody, or the investigator. The investigator shall file with the court a written report of its findings and recommendations and certify that the required examination has been made since the granting of the interlocutory decree. After hearing on said application, at which the petitioners and the child shall appear unless the presence of the child is waived by the court, the court may enter a final decree of adoption, if satisfied that the adoption is for the best interests of the child."
While we are not concerned here with the question of parental consent, we cannot help but observe that the legislature has provided that in certain compelling situations a child may be adopted without the consent of his natural parents. 10 O.S. Supp. 1974, § 60.06. If the Department's position were upheld, it would lead to the ultimate conclusion that the Department can always deprive a court of jurisdiction in an adoption proceeding involving a child judicially placed in the Department's custody while the natural parent cannot. We do not believe that the legislature intended to place the relationship of the Department and children entrusted to its custody on a higher plane than the law accords the relationship existing between natural parents and their children.
*768 The Department may not operate beyond the scrutiny of judicial review.
In this regard, we are persuaded by the reasoning of the Court of Appeals of Ohio in their decision of In Re Haun, 31 Ohio Misc. 9, 277 N.E.2d 258, affirmed 31 Ohio App.2d 63, 286 N.E.2d 478 (1972). There the Court was faced with a similar factual situation and the same question as is presented herein. In holding that the agency's refusal to consent did not deprive the trial court of jurisdiction to determine the adoption proceeding, the Court stated that:
"* * * [T]he requirement of agency consent was not intended by the legislature to give an unnatural parent an arbitrary, unreasonable or capricious power to defeat judicial review and, coincidentally, impede, in a specific case as in this instance, the objectives of securing qualified adoptive parents and promoting the best interests of a child available for adoption. Moreover, we find that refusal of consent even when it is not arbitrary, unreasonable or capricious does not deprive the Probate Division, Common Pleas Court, of jurisdiction. To the degree that it is reasonable, it does add an element for consideration in the Probate Court's determination of the qualifications of the adoptive parents and the best interests of the child."
See also, In Re McKenzie, 197 Minn. 234, 266 N.W. 746 (1936); and State ex rel. Portage County Welfare Dept. v. Summers, 38 Ohio St.2d 144, 311 N.E.2d 6 (1974).
We are of the opinion and so hold that the Department's refusal to consent to Debbie's adoption by the Johnsons does not impair the jurisdiction of the district court to fully hear and determine the matter of petition filed by the Johnsons in Case No. A-74-13.
Upon hearing, Respondent has the power and the duty in this case, as with all other adoption actions, to determine whether the evidence supports the allegations of the petition. Specifically, whether under the laws of Oklahoma the Johnsons are indeed persons who are eligible to adopt a child and whether this child is indeed one who is eligible to be adopted. If these allegations are borne out by the evidence, Respondent must then determine whether this proposed adoption would promote Debbie's best interests. In making this decision due weight should be accorded all the evidence concerning this child and these prospective adoption parents, including the refusal of the Department to consent thereto and the reasons propounded for that refusal.
Accordingly, we deny Department's Application for a Writ of Prohibition thereby refusing to prohibit Respondent from proceeding further in Case No. A-74-13, and to this extent, the Department's application is Denied.
It is apparent to this Court, however, that Respondent's orders, other than those granting a new trial in A-74-13 were unwarranted and that they constituted an unlawful application of judicial power. From the briefs it is clear that the only matter before the Respondent was the Johnson's Motion for New Trial and that said motion was based essentially upon an asserted error of law that occurred at the first trial.
There is no indication in the record that the Department was given notice that its custody of Debbie which was bestowed by JFJ-69-5 would be an issue litigated at this hearing. Further the record does not reflect that the order commanding the Department to deliver Debbie to Respondent was based upon any finding that Department had her actual and legal custody at that time and was therefore in a position to comply with such an order.
Under these circumstances it is clear to us that the purported orders of the trial court which: (1) vacated and set aside the Court's order in JFJ-69-5 placing custody of Debbie with the Department and restored her custody to the Court; and (2) *769 ordered the Department to deliver Debbie's physical custody to Respondent; and (3) provided that failure to abide with these orders would lead to a citation of contempt against the Director of the Department, were wholly unwarranted and the Writ will be granted as to these enumerated orders.
We Assume Original Jurisdiction. The Writ of Prohibition against Honorable Lyle R. Griffis, Associate District Judge of Caddo County, State of Oklahoma, is denied in part, and granted in part.
WILLIAMS, C.J., HODGES, V.C.J., and BARNES, SIMMS and DOOLIN, JJ., concur.
DAVISON, IRWIN, BERRY and LAVENDER, JJ., dissent.