749 P.2d 542 (1988)
In the Matter of B.C., J.W.C., and A.C.; Deprived Children.
In the Matter of the ADOPTION OF J.W.C., Minor Child.
STATE OF Oklahoma ex rel., CHOCTAW COUNTY DISTRICT ATTORNEY and Department of Human Services, Appellants,
v.
Jerald Ralph ANDERSON and Josephine Ann Anderson, Appellees.
Nos. 64156, 64157.
Supreme Court of Oklahoma.
January 19, 1988.
Don Ed Payne, Hugo, for appellees Jerald and Josephine Anderson.
Holmes & Johnson, Chiles E. Townsend, Kenneth E. Holmes, Ponca City, for appellants Mr. and Mrs. John Doe.
John K. Bounds, Asst. Dist. Atty., Hugo, and Thomas H. Tucker, Pamela K. Padley, Oklahoma Dept. of Human Services, Oklahoma City, for appellants Oklahoma Dept. of Human Services.
*543 SUMMERS, Justice.
In the district court of Choctaw County there were pending two types of cases concerning the same small boy who had been adjudicated "deprived" and was a ward of the court: (1) a juvenile proceeding to terminate the mother's rights brought by the Department of Human Services (DHS), and (2) an adoption proceeding brought by a couple named Anderson. These cases stretched out over several years, were consolidated, and finally resulted in a hearing at which the trial court "relinquished jurisdiction" in the juvenile case and entered an interlocutory decree of adoption in favor of the Andersons. That decree had the potential effect of removing the child from the home of certain DHS-approved foster parents where the child had been living the previous four years.
Those foster parents (known herein as the Does) then sought leave to intervene in the adoption case and their petition to do so was denied. Both the DHS in No. 64,156 and the Does in 64,157 appealed the proceedings to this court, and we entered an order staying removal of the child pending appeal. Then on our own motion we dismissed those portions of the appeal relating to the interlocutory decree of adoption as premature; an interlocutory decree of adoption is not an appealable order. 10 O.S. 1981 § 60.19.
We now make disposition of the issues remaining on appeal, the appeals being consolidated under 64,156 as the surviving number. The juvenile case is remanded with instructions, and the order denying leave to intervene in the adoption is reversed.
The essential operative facts are these. J.W.C. was born May 15, 1979, immediately placed in the emergency custody of DHS, and ten days later placed with the Andersons who were foster care volunteers. The child's mother was of questionable mental ability and J.W.C. was likely of incestuous origin. In the autumn of that year the court pursuant to a jury verdict adjudicated him "deprived". (JFJ-79-10).
In May of 1981 the court determined that J.W.C.'s best interest would be served by removing him from the home of the Andersons. The Andersons physically resisted and the sheriff accomplished the child's removal. He was then placed in the DHS's foster care/adopt program in another community with Mr. and Mrs. John Doe, where he has remained to this time.
In October of 1981 the district attorney filed a motion to terminate the parental rights of the mother for abandonment in order that the Does might become eligible to adopt. That winter the mother was admitted to Eastern State Hospital and in the spring of 1982 she was ordered to the Dow Room and Board facility for treatment as a mentally ill person (in DMH-82-4) where she remained at the time of these appeals.
In the meantime the Andersons had filed a petition to adopt along with a consent of the mother in their favor. The mother had attempted to withdraw that consent, and there were numerous filings, pleadings and hearings in both cases without much of anything determinative occurring. Finally on March 5, 1985 the judge presiding over the consolidated cases "waived or relinquished" jurisdiction over J.W.C. in the juvenile cases (actually there were two juvenile cases on file, JFJ-79-10 and JFJ-80-22) and entered an interlocutory decree of adoption in the other, approving the consent of the mother, thus setting the stage for the events described in our second paragraph.

I.
Was the trial court at liberty to waive and relinquish jurisdiction over J.W.C. in the juvenile proceeding? DHS urges that such was an abuse of discretion. The issue before the trial court in that case was whether to terminate the mother's parental rights for abandonment, thus making J.W.C. eligible for adoption by the Does. DHS insists it is entitled to have a ruling on that issue. The Andersons, however, correctly point out that when DHS filed its Motion for New Trial to the March 5, 1985 ruling no such error was brought to the attention of the trial court. 12 O.S. 1981 § 991(b) *544 and Federal Corp. v. Ind. School Dist., 606 P.2d 1141 (Okl.App. 1978 and approved for publication by Supreme Court February 14, 1980) would put the issue beyond our reach on appeal where the Motion for New Trial merely used the statutory language that the decision "is not sustained by sufficient evidence and is contrary to law."
Our analysis of the procedural stance of this part of the case, however, prevents us from disposing of the issue without a ruling. That analysis is thus: a "relinquishment of jurisdiction", a failure of the trial court to act, is not a judgment. 12 O.S. 1981 § 681. It is not an appealable order. 12 O.S. 1981 § 953. That does not necessarily mean that we may not review it. We customarily look to the content and substance of an instrument filed in this court rather than its form or title, Horizon's, Inc. v. KEO Leasing Co., 681 P.2d 757 (Okl. 1984), and sometimes treat a paper entitled "Application to Assume Original Jurisdiction" as a Petition in Error, or vice versa. Amarex, Inc. v. Baker, 655 P.2d 1040 (Okl. 1983). Here if relief sought by DHS tends to inform us that a trial judge has refused to perform an act which the law enjoins upon him as a duty we will recast that part of its "appeal" as a "petition for mandamus" and respond accordingly. See Sheegog v. Inc. Town of Lindsay, 127 Okl. 39, 259 P. 551 (1927). We find that to be the case here. Thus DHS is not bound here by the rule that on appeal only the assignments of error appearing in its Motion for New Trial will be considered; we do not treat this issue as an appeal at all.
While we will not by mandamus require a trial court to exercise its discretion in a particular way, we will require the court to exercise it, so as to give the losing party a final order from which it can appeal. Mapco v. Means, 538 P.2d 593 (Okl. 1975); Livingston v. Graham, 396 P.2d 496 (Okl. 1964); Parks v. Hughes, 312 P.2d 435 (Okl. 1957). The trial court is directed to withdraw its Order relinquishing and waiving jurisdiction in JFJ-79-10 and JFJ-80-22 and proceed to hear and rule on those matters properly before it in those cases.
The trial court is further directed to allow temporary custody of the child to remain with the Does until such time as it may determine otherwise upon hearing with notice to all interested parties.

II.
The Andersons have moved to dismiss the appeals of both DHS and the Does for lack of standing. Because we view DHS's supplication as an original action for mandamus rather than an appeal we do not further address that motion as concerning DHS.
Andersons argue that the denial of the Does' Motion For Leave to Intervene in the adoption case is not an appealable order. We held to the contrary in Stubblefield v. GMAC, 619 P.2d 620 (Okl. 1980). Denial of a petition to intervene is a final, appealable order. The motions to dismiss are denied.

III.
Although numerous assignments of error appear in the petitions in error we believe that with one exception all are related to the ruling on the interlocutory decree of adoption, and are thus not before the court at this time. The one exception is the Doe's appeal from the order denying their petition to intervene.
12 O.S.Supp. 1984 § 2024 governs intervention and provides in pertinent part:
A. INTERVENTION OF RIGHT
Upon timely application anyone shall be permitted to intervene in an action:
1. When a statute confers an unconditional right to intervene; or
2. When the applicant claims an interest relating to the property or transaction which is the subject of the action and he is so situated that the disposition of the action may as a practical matter impair or impede his ability to protect that interest.
The above portion of Section 2024 deals with intervention as a matter of right. We held in Re: Daugherty, 347 P.2d 657 (Okl. 1959) that failure of the foster parents to receive notice did not deprive the district court of its jurisdiction to place the custody *545 of the children from DHS back to the natural mother. But we did not address the issue of the foster parents' right to intervene in juvenile or adoption proceedings. In reviewing the case law across the country we find several occasions where foster parents have been found to have standing and/or right to intervene in adoption proceedings, Smith v. Wilson, 269 S.W.2d 255 (Ky. 1954); Hyman v. Stanley, 257 S.W.2d 388 (Mo. App. 1953); Oxendine v. Catawba Co. Dept. of Soc. Services, 303 N.C. 699, 281 S.E.2d 370 (1981); and Harris Co. Child Welfare Unit v. Caloudas, 590 S.W.2d 596 (Tex.Civ.App. 1979), juvenile proceedings, Welfare of E.G., 268 N.W.2d 420 (Minn. 1978), and custody proceedings, Trotter v. Pollen, 311 S.W.2d 723 (Tex.Civ.App. 1958).
In Smith v. Organization of Foster Families for Equality and Reform, 431 U.S. 816, 97 S.Ct. 2094, 53 L.Ed.2d 14 (1977) the United States Supreme Court addressed several questions concerning the standing of foster parents. The suit involved an attack on the constitutionality of state procedures for the removal of foster children from foster homes. The Court held that not only do foster parents have standing to assert the claim that they have a constitutionally protected liberty interest in the integrity of the family unit, but also that they have standing to raise the rights of foster children even where court-appointed counsel represent the children.
In Trotter v. Pollen, supra, the Texas Court of Civil Appeals considered a case where a father and mother were divorced, the custody of a child was awarded to the father, the father boarded the child in a home of third persons, and the father after one year ceased making the ten dollar weekly payments under his contract with the third persons. When the third persons thereafter voluntarily assumed responsibility for the child's care and maintenance and treated the child as their own, these third persons were "foster parents", stood "in loco parentis", and were held to have a justiciable interest in the controversy involving the custody of the child as against the natural mother after the death of the father.
In Oklahoma we have defined the term "in loco parentis" as follows:
"The term `in loco parentis' means in place of a parent, and a `person in loco parentis' may be defined as one who has assumed the status and obligations of a parent without a formal adoption." Workman v. Workman, 498 P.2d 1384, 1386 (Okl. 1972)
The Does have had custody of J.W.C. since June 19, 1981 with repeated assurances from DHS that due to the mother's abandonment her rights would be terminated and they would be able to adopt him. They have cared for and treated the child as a member of their own family since that date, and are without doubt "persons in loco parentis". Being foster parents and persons in loco parentis, we hold that the Does do have standing to intervene and to assert their justiciable interest in the adoption case by the Andersons. On remand of this case to the district court for reasons as herein stated, we find that the Does should be allowed to intervene as a matter of right and participate as parties in all further proceedings. 12 O.S.Supp. 1984 § 2024 A.2. Their intervention will better enable the trial court to have before it "all the evidence concerning the child" in making its final decision, as is required in adoption proceedings under State ex rel. Dept. v. Griffis, 545 P.2d 763, 768 (Okl. 1975).
The case is remanded to the District Court with instructions to proceed in a manner consistent herewith.
DOOLIN, C.J., HARGRAVE, V.C.J., and HODGES, LAVENDER, ALMA WILSON and KAUGER, JJ., concur.
SIMMS, J., concurs in result in part and dissents in part.
OPALA, J., concurs in part and dissents in part.
SIMMS, Justice, concurring in result in part, and dissenting in part:
We are faced with a purported interlocutory decree of adoption issued through a statutorily prohibited procedure and based on a consent which was executed, and later *546 attempted to be withdrawn, by the child's mentally retarded and mentally ill mother whose parental rights have never been terminated.
I would reverse the trial court in all respects. I cannot join the majority in its holding that the trial court's ruling "waiving" its jurisdiction over this child in the termination of parental rights case (JFJ-70-10) is not an appealable order, simply because the argument was not raised in a motion for new trial. Even assuming, which I do not, that such a strict rule of pleading would apply in a juvenile matter, the majority overlooks the point that this ruling is a jurisdictional defect in this case as this child is ineligible for adoption, whether by the Does or the Andersons, without a severance of natural parental ties or a valid consent. 10 O.S. 1981, §§ 60.5, 60.6, and 1134. Matters of jurisdictional significance may of course be addressed by this Court at any time and on its own motion. Petitioners present no authority for their argument that 12 O.S. 1981, § 991 (b) and the strictures of Federal Corp. v. Independent School District., 606 P.2d 1141 (Okl.App. 1978), apply in a juvenile matter, and I am not aware of any previous support for that position.
We have previously recognized that juvenile matters are special statutory proceedings within the meaning of 12 O.S. 1981, § 5, and that the nature of juvenile proceedings makes some civil procedural rules inapplicable. We noted in Matter of Christina T., 590 P.2d 189 (Okl. 1979) that juvenile actions are not, and were never intended to be, proceedings capable of resolution upon "a flurry of pleadings", and for that reason summary judgment, said to be applicable to "all" civil proceedings in Northrip v. Montgomery Ward & Co., 529 P.2d 489 (Okl. 1974), was not applicable to a juvenile proceeding and was inappropriate for that purpose. Similarly, it is inconceivable to me that this Court would feel itself powerless to review and correct a jurisdictional defect as glaring as the absence of an order terminating parental rights in a matter in which a child was supposedly adopted, simply because of a failure of an attorney to plead fully in a motion for new trial, a pleading unrecognized by the juvenile code.
The trial court's circumvention of established procedure in combining the action for termination of parental rights (JFJ-79-10) with the adoption action (A-84-15) is expressly prohibited by statute. 10 O.S. 1981, § 1134 provides:
"An action to adopt a child may not be combined with an action to terminate parental rights, and when the rights of a parent have been terminated, neither an interlocutory nor a final decree of adoption may be rendered until the decree terminating parental rights has become final, but this section does not apply to a proceeding to adopt a child without the consent of a parent when the court has determined that consent is not legally required." (Emphasis Added)
The wisdom of that prohibition is borne out by the confusion and disruption caused in this matter by the trial court's action in combining the two proceedings on its own motion and refusing to resolve the termination of parental rights case, but proceeding to grant the interlocutory decree of adoption.
The "consent" to adoption forming the foundation of this interlocutory decree was originally filed by these same petitioners in an attempt to adopt this child in 1981 (A-81-23), which was four years prior to the time this matter was heard. After the consent had been filed in the 1981 case, the mother filed a motion to withdraw that consent and moved to set it aside and hold it void and of no effect as she had, she alleged, lacked the competency to understand the nature of her actions. She also asserted that her father had perpetrated a fraud upon her and coerced her into executing the document. Before that motion to withdraw the consent was ruled on, the court dismissed A-81-23 in deference to the prior and continuing jurisdiction of the juvenile judge over this child who had been adjudicated deprived in case JFJ-79-10. See, Matter of Betty C., 632 P.2d 412 (Okl. 1981). Later the juvenile judge in that matter was disqualified at the urging of *547 the Does and the Andersons. The current trial judge was then appointed.
By divided vote this Court earlier dismissed the appeal from the interlocutory decree of adoption as premature on its own motion. In that decision it is certain that this Court was not cognizant of the obvious invalidity of the consent or of the fact that the decree was rendered by a procedure specifically prohibited by statute.
I agree that the Does have standing to challenge this adoption action. This Court should vacate that decree, however, not simply send the matter back with the interlocutory decree in place for the trial court to determine only whether to enter the final decree. The consent in the adoption is obviously invalid and we should so hold at this time. See, Adoption of Robin, 571 P.2d 850 (Okl. 1977).
Our order dismissing the interlocutory appeal should be withdrawn, the appeal reinstated, the decree vacated and the consent set aside. In the Adoption of Graves, 481 P.2d 136 (Okl. 1971); Webb v. Wiley, 600 P.2d 317 (Okl. 1979).
The trial court should be ordered to sever the pending cases, JFJ-79-10 and A-84-15, and proceed in the juvenile matter to reach a proper resolution of those issues.
I am authorized to state that Justice OPALA concurs in part with the views expressed herein.
OPALA, Justice, concurring in part and dissenting in part.
Today the court 1) recasts sua sponte a single issue in this consolidated appeal into an original action for a prerogative writ, 2) vacates the trial court's order which dismissed the parental termination proceeding by "waiver and relinquishment" of its "juvenile jurisdiction", and 3) authorizes the foster parents to intervene in a proceeding brought for the child's adoption by the persons who held the mother's consent. I concur in the view that the foster parents have standing to intervene in all proceedings that affect the child and join in the court's conclusion that the foster parents have a statutory right to appeal from denial of their plea to intervene. I recede from the remainder of the court's pronouncement. I would consider this consolidated appeal as bringing for review three final orders, all appealable. The first of these orders brought to an end the parental termination proceeding; the second refused to allow the mother's withdrawal of her consent, and the third denied the foster parents' plea in intervention.

I.

THE ANATOMY OF LITIGATION
Before the court are two appeals, both filed April 11, 1985: 1) cause No. 64,156 brought by the District Attorney of Choctaw County and the Oklahoma Department of Human Services [DHS], who are called collectively the State, and 2) cause No. 64,157 lodged by the foster parents. Both the State and the foster parents appeal from the trial court's "waiver" or "relinquishment" of jurisdiction over the publiclaw parental termination proceeding and from an "interlocutory decree of adoption."[1] Foster parents appeal also from the trial court's refusal to allow their intervention in the adoption proceeding.[2]

II.

THE TRIAL COURT'S DISMISSAL OF THE PARENTAL TERMINATION PROCEEDING BY "WAIVER AND RELINQUISHMENT OF JURISDICTION" CONSTITUTES AN APPEALABLE ORDER AND MAY BE REVIEWED AS A PUBLIC-LAW ISSUE
The trial court's "waiver" of jurisdiction in the then pending parental termination proceeding constitutes an appealable order. *548 In the context of juvenile proceedings, waiver and relinquishment[3] of jurisdiction is a conceptual anachronism that descended into the storehouse of antiquarian procedural lore, when, in the wake of our 1969 constitutional court reform, "juvenile judicature"[4] ceased to exist as a separate cognizance, and all judicial jurisdictions exercisable in the counties under the state law came to be integrated in the new omni-competent, single-level district court. Because the trial court's "waiver" constitutes an "end-of-the-line" disposition of the parental termination case and must be regarded as the procedural analogue of a dismissal, it constitutes a final and appealable order. 12 O.S. 1981 §§ 952(b)(1) and 953.[5] Moreover, a public-law suit for termination of parental bond is dismissible only if "good cause" is shown.[6] The existence of that cause is reviewable on appeal.
The appeal was timely. Failure of DHS to include the dismissal as a ground for new trial raises no barrier to our review of the dismissal order. A public-law controversy may be decided by an appellate court upon issues not raised either before it or below.[7]

III.

THE TRIAL COURT'S REFUSAL TO ALLOW WITHDRAWAL OF THE MOTHER'S CONSENT TO ADOPT IS APPEALABLE
Withdrawal of a consent to adopt is authorized by 10 O.S. 1981 § 60.10.[8] That *549 section expressly makes any consent irrevocable upon entry of an interlocutory or final decree of adoption. The trial court's refusal to allow the mother's withdrawal made the consent to adoption irrevocable and terminated her claim to the child. The refusal  an order analogous in legal consequence to one declaring a child eligible for a consentless adoption  puts an end to a parent's claim vis-a-vis the child and is hence appealable as a "final order."[9]

IV.

SUMMARY
I would not reach for review on the merits either the dismissal of the parental termination proceeding or the trial court's refusal to allow withdrawal of the mother's consent to adopt. The foster parents were adversely affected by each of the three decisions now tendered for review in both appeals  not just by the denial of their plea in intervention. Since they were deprived of an opportunity to press their case in opposition to the vital issues raised below, which affected their status to the child, all three orders tendered for our review, must, as to them, be regarded as the product of tainted judicial process. The causes before us should hence be remanded with direction that the issues tendered by the public-law parental termination case be resolved in advance of reaching for disposition the controversy in the adoption-related proceeding.
The foster parents are adversely affected by, and hence entitled to participate in, all phases of the case which deal with the status of the child in contest. I would hence reverse 1) the dismissal of the parental termination proceeding effected below by "waiver and relinquishment," 2) the refusal to allow the mother's withdrawal of her consent to adoption, 3) the denial of the foster parents' plea to intervene. The proceedings should be remanded for further hearing in which all interested parties must be afforded full and fair opportunity to participate.
NOTES
[1] The court dismissed as premature that portion of the foster parents' appeal by which they sought review of the interlocutory adoption decree.
[2] The foster parents were also aggrieved by the trial court's refusal to allow the mother's withdrawal of her adoption consent. That ruling formed a well-nigh insuperable legal impediment to the foster parents' own quest for adoption.
[3] In national jurisprudence "waiver" or "relinquishment" of jurisdiction is used to signify a cession or transfer of cognizance from an adult to a juvenile tribunal or, vice versa, from a juvenile to an adult forum. This procedure is also known as "transfer," "remand," or "certification." See West v. State, Department of Public Welfare, Okl., 536 P.2d 901, 903-904 [1975]; State v. Valentine, Okl.Cr., 536 P.2d 1291, 1292 [1975]; Ex parte Lewis, 85 Okl.Cr. 322, 188 P.2d 367, 383 [1947]; Besharov, Juvenile Justice Advocacy, 249 (Practising Law Institute, New York City, 1974); Miller, Dawson, Dix, and Parnas, The Juvenile Justice Process, 333-386 (The Foundational Press, Inc., 1976); Standards Relating to Transfer Between Courts, Juvenile Justice Standards Project, IJA-ABA Joint Commission, 1977; Keith, Waiver of Jurisdiction in Juvenile Courts, 30 Ohio St.L.J. 132 [1969]; Hosey, Waiver in Juvenile Proceedings, 23 Baylor L.Rev. 467 [1971].
[4] "Juvenile judicature" means judicial decision-making process under that body of statutory public law which protects underage persons from adult criminal accountability and shields them from exposure to harm by abuse or neglect. Davis v. Davis, Okl., 708 P.2d 1102, 1108-1110 [1985]; Matter of C.G., Okl., 637 P.2d 66, 71 [1981]; see also, A.E. v. State, Okl., 743 P.2d 1041, 1050-1051 [1987] (Opala, J., dissenting in part).
[5] The terms of 12 O.S. 1981 § 952(b)(1) provide:

"The Supreme Court may reverse, vacate or modify any of the following orders of the district court, or a judge thereof:
1. A final order; * * *" [Emphasis added.]
The terms of 12 O.S. 1981 § 953 provide:
"An order affecting a substantial right in an action, when such order, in effect, determines the action and prevents judgment, and an order affecting a substantial right, made in a special proceeding or upon a summary application in an action after judgment, is a final order, which may be vacated, modified, reversed, as provided in this article." [Emphasis added.]
An order which precludes a person from proceeding further in the trial court is appealable. Mayhue v. Mayhue, Okl., 706 P.2d 890, 893 [1985] and Centorp Corporation v. Gulf Production Corporation, 183 Okl. 436, 83 P.2d 181, 185 [1938]. See also, Carder v. Court of Criminal Appeals, Okl., 595 P.2d 416, 422 [1979], where dismissal of a juvenile proceeding operated to terminate the action as well as the court's jurisdiction.
[6] The terms of 10 O.S.Supp. 1986 § 1116(A)(6) provide:

"The court may dismiss the petition or otherwise terminate its jurisdiction at any time for good cause shown." [Emphasis added.]
[7] Davis v. Davis, Okl., supra note 4 at 1104.

There is no need for recasting any part of this appeal into a prerogative writ proceeding. All the issues tendered by DHS may be reached for review because of this court's freedom to resolve a public-law controversy unimpaired by the usual strictures of the adversary process. "Whenever widespread interest may demand an immediate resolution of some vital public law issue, no impediment arising from infirmity in the procedural posture of the case  however well recognized in purely private litigation  will bar our exercise of reviewing powers." Application of Goodwin, Okl., 597 P.2d 762, 764 [1979].
[8] The terms of 10 O.S. 1981 § 60.10 provide:

"Withdrawal of any consent filed in connection with a petition for adoption hereunder shall not be permitted, except that the court, after notice and opportunity to be heard is given to the petitioner by the person seeking to withdraw consent and notice to any agency participating in the adoption proceedings, may, if it finds that the best interest of the child will be furthered thereby, issue a written order permitting the withdrawal of such consent if request for leave to withdraw consent is submitted in writing not later than thirty (30) days after consent was executed. The entry of the interlocutory or final decree of adoption renders any consent irrevocable." [Emphasis added.]
[9] See Merrell v. Merrell, Okl., 712 P.2d 35, 36 [1985]; Matter of Adoption of E.S.P., Okl., 584 P.2d 209, 210 [1978].