The Matter of P.C.; T.C.; M.C.; and A.C., children adjudicated to be deprived.

**Mary E. WARD, Appellant,**

v.

The STATE of Oklahoma ex rel., DEPARTMENT OF HUMAN SERVICES and Creek County District Attorney, Appellees.

No. 78273.

Court of Appeals of Oklahoma, Division No. 1.

Oct. 27, 1992.

Marjorie J. Ramana, Oklahoma City, for appellant.

Lantz McClain, Dist. Atty., J. Bruce Schultz, Asst. Dist. Atty., Sapulpa, for appellees.

## MEMORANDUM OPINION

JONES, Judge:

Appellant, Mary E. Ward (Ward), seeks review of the trial court's order denying her Motion To Intervene in a juvenile proceeding determining temporary placement of four minor children in the custody of the Department of Human Services (DHS). Appellant asserts, herein, the trial court erred in denying her motion because she has a justiciable interest in the case as a person *in loco parentis*, and because her right to intervene is protected by the due process clause of the Fourteenth Amendment. DHS contends Ward lacks any legally cognizable interest which would give her standing to intervene.

Ward is the maternal grandmother of the children involved in these proceedings, and has apparently had physical custody of them since 1987. In 1988, the children were declared deprived as to their natural parents in two separate hearings. The trial court awarded DHS temporary legal custody of the children, but Ward retained physical custody of the children for over a three year period by agreement with DHS. On May 20, 1991, a review hearing was held by the District Court. The transcript indicates Ward was present without counsel and not allowed to testify. The trial court found that "in the best interest of the children", they should not be released to, or placed with, the natural mother and ordered psychological evaluations for the mother, the children, and the grandmother. The day after the hearing, DHS removed the children from the home of Ward. On

July 19, 1991, Ward filed a Motion to Intervene in District Court which was denied on August 15, 1991. The administrative proceedings continued below, and in December, 1991, DHS placed the children with Ward. It is the trial court's Order of August 15, from which this appeal is taken.

We note the record on appeal indicates the long term goal of DHS in this case is the reunification of the four minor children with their natural mother, and that the previous placement of the children with Ward, according to DHS, was *temporary*, not permanent in nature. The proceedings below are not for termination of parental rights or adoption, but are review hearings conducted pursuant to 10 O.S.1991 § 1116.1.

Ward contends the trial court erred in denying her Motion to Intervene because: (1) Appellant is a person acting *in loco parentis* who has a justiciable interest in the case; and, (2) Ward's relationship with her grandchildren is protected by the due process clause of the Fourteenth Amendment of the United States Constitution. The parties attempt to discuss a broad range of concerns outside the purview of the attendant proceedings, but we limit our review to the issues as framed by Ward's first proposition of error.

Ward filed her Motion To Intervene in District Court pursuant to 12 O.S.1991 § 2024, alleging a "deep and abiding interest in the welfare of the children". The trial court denied Ward's motion, but gave no reason for the denial. Ward's citation of authority in her Motion below and her first proposition of error in her Brief–In–Chief on appeal are the same and we address them accordingly.

■■■ *Workman v. Workman,* 498 P.2d 1384 (Okl.1972), defines the term *"in loco parentis"* to mean in place of a parent. A person *in loco parentis* is one who has assumed the status and obligations of a parent without a formal adoption. In the present case, the evidence clearly shows Ward acted as a person *in loco parentis* to the children for over 3 years, irrespective of the source from which that authority was derived. *Matter of B.C.,* 749 P.2d 542 (Okl.1988), stated that foster parents were persons *in loco parentis* and had standing to intervene and participate as parties in an adoption proceeding. *In Matter of Adoption of R.R.R.,* 763 P.2d 94 (Okl.1988), addressed a grandmother's right to intervene in an adoption proceeding, and mentioned in a footnote that "Many jurisdictions have found that foster parents/grandparents have standing to intervene in adoption proceedings ...", 763 P.2d at 100. The Court then remanded the cause to the trial court for a determination of whether the grandmother should be regarded as a person *in loco parentis.* While these cases address the rights of foster parents or grandparents to intervene in *adoption* proceedings, DHS maintains they are distinguishable from the present proceedings because the current appeal pertains to hearings reviewing the custody status of deprived children under 10 O.S.1991 § 1116.1. However, as will be explained below, *a fortiori*, a foster parent, has a right to assert a limited liberty interest she may have in the welfare of her foster children.

Ward relies most heavily on the case of *Smith v. Organization of Foster Families,* 431 U.S. 816, 97 S.Ct. 2094, 53 L.Ed.2d 14, (1977), for the proposition that she should be permitted to intervene to assert a liberty interest, which is constitutionally protected under the due process clause of the United States Constitution. Our reading of *Smith* supports Ward's hypothesis. In a fact situation similar to the case at bar, the United States Supreme Court addressed the question of whether foster parents and foster children have a constitutionally protected liberty interest in the integrity of their family unit. The Court also addressed the question of whether due process issues were raised when the children were taken from the foster parents, resulting in a potential conflict between the foster parents and the state officials. In a lengthy opinion, the Court stated, inter alia, that foster family units were a creation of state law and contractual arrangements, and consequently, the limited recognition accorded to the foster family by the statutes, and the contracts executed by the

foster parents, argue against any but the most limited constitutional "liberty" in the foster family. This limited liberty interest, however, was entitled to *some* basic due process protection under the United States Constitution, and could be raised when foster children were removed from the foster home.

The New York statutes at issue in *Smith* are similar to Oklahoma statutes, wherein a child in the custody of a foster parent may be removed from the foster home at the discretion of New York's Department of Social Services. New York law also provides, similarly to Oklahoma, that the judicial courts have the right to periodically review the status of foster children, 10 O.S. § 1116.1, and that all interested agencies are to be made parties to the proceedings. 10 O.S. § 1111.A(1).

DHS contends that none of the nine Justices participating in *Smith* went on record holding that foster parents have a constitutionally protected liberty interest in the continuation of their relationship with their foster children. However, this ambiguity appears to be clarified in Justice Stewart's concurring opinion, wherein he stated:

> In these circumstances, I cannot understand why the Court thinks itself obligated to decide these cases *on the assumption that either foster parents or foster children in New York have some sort of "liberty" interest in the continuation of their relationship.* Rather than tiptoeing around this central issue, I would squarely hold that the interests asserted by the [foster parents] are not of a kind that the due Process Clause of the Fourteenth Amendment protects ... (Emphasis added.)

*Smith*, 431 U.S. at 857, 858, 97 S.Ct. at 2116, 2117.

Also, we observe that the majority answered the question of whether a limited liberty interest existed, and noted the statutory judicial hearings (similar to our § 1116.1 hearings), were the proper forum for foster parents to express those interests:

> Since this remedy provides a sufficient constitutional preremoval hearing to pro-

tect whatever liberty interest might exist in the continued existence of the foster family when the State seeks to transfer the child to another home, *a fortiori* the procedure is adequate to protect the lesser interest of the foster family in remaining together at the expense of the disruption of the natural family.

431 U.S. at 855, 97 S.Ct. at 2115.

Although the Court failed to specify exactly what those limited liberty interests were, we cannot assume, under the facts of this case, that Ward's interest is so illusory as to not be protected under that pronouncement.

■ Applying the Court's rationale to the present case, the record is clear that Ward had custody of the children for a three year period. The record is equally unclear as to why she was not allowed to appear at the May 20th hearing. It is apparent that some sort of liberty interest, no matter how small, has inured to Ward. She was not allowed access to the orders of the May 20th hearing, and was without counsel. Her only recourse was to hire an attorney and file a Motion to Intervene. This is not a case where the failure to grant Ward her requested relief (an opportunity to be heard) will inevitably tend to dilute or adversely affect the alleged constitutional rights of the other parties. Denying Ward her right to intervene simply has no effect whatever on the other parties separate claims during the hearing, and does not impair their constitutional rights. There is no reason not to allow Ward to present her arguments to the review hearing, as each separate party is adequately represented by independent and competent counsel. We hold that Ward has a legitimate, "limited" liberty interest in this matter pursuant to *Smith*, regardless of the size of that interest. We therefore remand to the District Court with instructions to allow Ward to be heard as an intervenor, in future hearings.

■ Having remanded thus, we find it unnecessary to address Ward's second proposition of error wherein she specifically argues that her relationship of *grand-*

*mother* to the children is protected by the due process clause of the Fourteenth Amendment. Moreover, the record and transcript on appeal reflect that Ward did not raise this constitutional issue in the trial court below, and consequently she cannot raise it on appeal. *Pelican Production Co. v. Mize*, 573 P.2d 703 (Okl.1977); *Bane v. Anderson, Bryant & Co.*, 786 P.2d 1230 (Okl.1989).

The statutory provisions of 10 O.S.1991 § 21.1 A, granting grandparents a second order of preference in custody proceedings, is not germane to the instant appeal. Ward does not assert, and the record does not show, that she has been denied visitation with the children. However, the language of 10 O.S.1991 § 1111, supports Ward's contention that she has a right to intervene in the present matter as a person "... having a direct interest in the case ...". That appropriate administrative remedies are available to her through DHS, and she now, again, has the children temporarily placed in her home, is not relevant to our decision.

In the instant case, Ward has a right to intervene and be heard because she was a person *in loco parentis* for over three years. The grandmother's input, through intervention, may be essential for the trial court's review of temporary custody.

REVERSED AND REMANDED.

ADAMS, P.J., concurs.

GARRETT, J., concurs. I concur because this opinion does not address Ward's rights as a grandparent.